## Light Rigging Company et al. *v.* Department of Public Utility Control et al.
## (14200)

Peters, C. J., Callahan, Glass, Borden and F. X. Hennessy, Js.

Argued March 19—decision released June 11, 1991

*Gerald A. Joseloff,* for the appellants (plaintiffs).

*Robert S. Golden, Jr.,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* then attorney general, and *Phyllis E. Lemell,* assistant attorney general, for the appellee (named defendant).

*Frederick W. Odell,* for the appellee (defendant John Balkun III).

F. X. HENNESSY, J. The sole issue in this consolidated appeal is whether the plaintiffs have standing to appeal two decisions of the defendant department of public utility control (DPUC) granting a certificate of public convenience and necessity (certificate) to the defendant John Balkun III doing business as Jack's Rigging and Machinery Sales (Balkun).[1] The plaintiffs, Light Rigging Company, J. R. Christoni, Inc., Walker Crane and Rigging Corporation, Northeast Riggers, Inc., and Paul J. Buccheri Company[2] (plaintiffs), who hold certificates similar to that granted to Balkun, appealed the DPUC's decisions to the Superior Court. The court, finding that the plaintiffs were not aggrieved, rendered judgments dismissing the appeals. From those judgments the plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. We reverse the trial court's judgment.

The relevant facts are as follows. On January 31, 1986, Balkun filed an application with the DPUC seeking motor carrier authorization, as required by General Statutes (Rev. to 1985) § 16-283,[3] to transport small machinery and accessories, new and used, over

---

[1] The DPUC acted pursuant to General Statutes (Rev. to 1985) c. 285, §§ 16-281 through 16-308. Effective July 1, 1989, responsibility for administering this chapter was transferred to the department of transportation. General Statutes c. 245c, §§ 13b-387 through 13b-414.

[2] Although the plaintiff Paul J. Buccheri Company was noted for the court's record on the docketing statement filed pursuant to Practice Book § 4013 (a) (4), it is now out of business.

[3] "[General Statutes (Rev. to 1985)] Sec. 16-283. CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY. No person shall operate any motor vehi-

irregular routes between all points in Connecticut. On August 22, 1986, the DPUC granted the plaintiffs' petition for party status to protest Balkun's application.

On August 28, 1986, and September 5, 1986, the DPUC held public hearings on Balkun's application, as required by General Statutes (Rev. to 1985) § 16-284,[4] at which time Balkun and the plaintiffs were heard. On December 10, 1986, the DPUC mailed its proposed decision to Balkun and the plaintiffs. The plaintiffs filed written exceptions to the proposed decision with the DPUC on December 22, 1986. On January 6, 1987, the DPUC issued its final decision granting Balkun's application and issuing him a certificate.

Following the plaintiffs' appeal of the DPUC's January 6, 1987 decision to the Superior Court, but prior to a hearing on the appeal, the DPUC, on its own motion pursuant to General Statutes § 16-9,[5] reopened the docket on Balkun's application to allow the plaintiffs an opportunity to present written briefs and oral argument on the proposed decision of December, 1986.

cle in the transportation of property for hire as a motor common carrier without first having obtained from the department of public utility control, after hearing, a certificate of public convenience and necessity to so operate."

[4] "[General Statutes (Rev. to 1985)] Sec. 16-284. HEARING ON APPLICATION FOR CERTIFICATE. Upon the filing of an application and the payment of the fee prescribed, the department of public utility control shall, within a reasonable time, fix the time and place for a hearing thereon and shall promptly give written notice thereof to the commissioner of transportation who shall have the right to participate in such hearing, and to such parties in interest as the department deems necessary and give public notice thereof at least one week prior to such hearing."

[5] "[General Statutes] Sec. 16-9. ORDERS. All decisions, orders and authorizations of the department of public utility control shall be in writing and shall specify the reasons therefor, shall be filed and kept in the office of the department and recorded in a book kept by it for that purpose and shall be public records. Said department may, at any time, for cause shown, upon hearing had after notice to all parties in interest, rescind, reverse or alter any decision, order or authorization by it made. Written notice of all orders, decisions or authorizations issued by the department shall be given to the company or person affected thereby, by personal service upon such company or person or by registered or certified mail, as the department determines."

On October 13, 1987, the plaintiffs appeared before the DPUC, under protest, to present oral argument. On November 3, 1987, the DPUC again approved Balkun's application, and the plaintiffs filed a second appeal with the Superior Court.[6] The plaintiffs' two appeals were consolidated by order of the court, *Allen, J.,* on May 16, 1988. The DPUC filed motions to dismiss the plaintiffs' appeals for lack of subject matter jurisdiction on the ground that the plaintiffs had failed to plead and prove sufficient facts to support a finding of aggrievement, in accordance with General Statutes (Rev. to 1987) § 4-183.[7]

Although the plaintiffs have briefed eight issues, the sole issue that we need to consider is whether the trial court properly dismissed the plaintiffs' appeal for lack of jurisdiction. Issues two through eight[8] reach the

---

[6] Statutory authority for the plaintiffs' appeals is found at General Statutes (Rev. to 1987) § 16-307, which provides in pertinent part: "Any person aggrieved by any . . . decision of the department of public utility control under the provisions of this chapter may appeal therefrom in accordance with the provisions of section 4-183."

[7] General Statutes (Rev. to 1987) § 4-183 provides in pertinent part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[8] In issues two through eight, the plaintiffs contend that the trial court incorrectly (2) failed to find that Balkun had failed to meet his burden of proof for the issuance of a license/certificate pursuant to General Statutes (Rev. to 1985) § 16-283 et seq., including his failure to prove public need pursuant to General Statutes (Rev. to 1985) § 16-286; (3) failed to find that the supporting witnesses and supporting evidence submitted by Balkun only proved public need for transportation services to and from a single point in Connecticut; (4) failed to find that the DPUC did not properly comply with the requirements of General Statutes (Rev. to 1985) § 4-179; (5) failed to find that the DPUC acted in an arbitrary and capricious manner and in abuse of its discretion in not complying with General Statutes § 16-9 and by not rescinding or suspending the first final decision before proceeding with the opening of the original application; (6) failed to comply with the written stipulation of the parties set forth in a motion to consolidate; (7) failed to find that the DPUC had erred in granting a license/certificate

merits of the DPUC's decision. The trial court, however, was bound to dismiss the case upon finding that it had no jurisdiction; *Kinney* v. *State,* 213 Conn. 54, 58, 566 A.2d 670 (1989); and therefore never addressed the merits of the plaintiffs' appeal. Thus issues two through eight are not properly before us. See *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 608–609, 436 A.2d 1259 (1980).

Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. *Bakelaar* v. *West Haven,* 193 Conn. 59, 65, 475 A.2d 283 (1984). "It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care,* 214 Conn. 726, 729, 573 A.2d 736 (1990); *Beckish* v. *Manafort,* 175 Conn. 415, 419, 399 A.2d 1274 (1978). " 'Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern,* 165 Conn. 190, 192, 332 A.2d 78 (1973). . . .' " *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 648–49, 556 A.2d 1020 (1989).

Neither the DPUC nor the plaintiffs deny that aggrievement is a prerequisite for appeal, nor do they

---

to Balkun despite the lack of safety to the public using the highways; and (8) failed to find that the DPUC had not properly specified a headquarters location in the license/certificate issued to Balkun.

quarrel with the test for aggrievement as set out in our decision in *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 524 A.2d 636 (1987). In that case, we stated that " ' "[t]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, 'the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision.' . . ." ' *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven,* [supra, 65]." *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 299–300. We also stated that " '[a]ggrievement is established if "there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953).' *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980)." *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 300.

The trial court concluded, and we agree, that the plaintiffs satisfied the first prong of the aggrievement test. The plaintiffs demonstrated their specific personal and legal interest in the subject of the DPUC's decision by alleging and providing evidence that their DPUC certificates, for the intrastate operations that they own, authorize them to provide services similar to those that Balkun's contested certificate would authorize Balkun to provide. Neither the DPUC nor the plaintiffs challenge this conclusion.

The plaintiffs contend, however, and we agree, that the trial court incorrectly concluded that the plaintiffs

had failed to satisfy the second prong of the test—to show that their specific personal and legal interests had been specially and injuriously affected.

The plaintiffs have alleged in both appeal petitions that they are aggrieved by the decision of the DPUC to grant Balkun's certificate without any showing of a public need for the service Balkun proposes to render beyond a small circumscribed need in the greater New Britain area. In affidavits attached to their memoranda of law in opposition to the DPUC's motions to dismiss, the plaintiffs have asserted that their motor carrier certificates are transferable, saleable and traded in commerce as assets of economic value, and that the existence of additional certificates causes a dilution and diminution in the value of each of their certificates.

In finding that the plaintiffs' legal interest in their certificates had not been specially and injuriously affected by the DPUC's grant of a certificate to Balkun, the trial court relied upon the principle that absent an allegation of unfair or illegal competition, "an allegation merely of competition likely to result in lost revenues is ordinarily insufficient to confer standing." *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 302. The court concluded that because the plaintiffs had not alleged or provided evidence that competition caused by the grant of authority to Balkun was unfair or illegal, they had done no more than to allege normal business competition. The court distinguished between the value of the license to operate and the value of the plaintiffs' business operations and concluded that the plaintiffs had failed to establish that the grant of a certificate to Balkun in any way adversely affected the value of their legally protected interests in their certificates.

In *State Medical Society* v. *Board of Examiners in Podiatry,* supra, the principle relied upon by the trial

court was applied to determine whether a physician's allegations of lost revenues from competition satisfied the second prong of the aggrievement test.[9] The physician in that case was licensed in Connecticut on his satisfaction of state requirements that do not include consideration of either the effect of his licensing upon other physicians or the need for his services.[10]

---

[9] Because the plaintiff physician in *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 524 A.2d 636 (1987), had effectively alleged that his anticipated loss of revenues resulted from illegal or unfair competition, we concluded that the second prong of the aggrievement test had been satisfied.

[10] "[General Statutes (Rev. to 1985)] Sec. 20-10. LICENSURE. EXAMINATION. OTHER REQUIREMENTS. Except as provided in section 20-12, no person shall receive a license under the provisions of section 20-13 until he files a statement with the department of health services certifying that he: (1) (A) Is a graduate of a medical school located in the United States or Canada which is accredited by the liaison committee on medical education or (B) is a graduate of a medical school located in Mexico who has satisfied all requirements necessary for licensing as a physician in Mexico except for (i) having completed a mandatory period of social service and (ii) having acquired Mexican citizenship, and has satisfactorily completed one year of supervised clinical training in a 'fifth pathway program' approved by the American Medical Association at the time of his graduation from medical school and conducted by an American medical school or (C) is a graduate of a medical school, which at the time he entered was approved by the Connecticut medical examining board from a listing compiled by the World Health Organization, who has received the degree of doctor of medicine or its equivalent and has satisfied the requirements for licensing as a physician in the country in which the school exists; (2) has successfully completed not less than two years of training as a resident physician or its equivalent in a program approved by the liaison committee on graduate medical education and (3) has passed an examination prescribed by the department of health services with the advice and consent of the appropriate examining board. The Connecticut medical examining board shall annually publish a list of schools approved by said board under subparagraph (C) of subdivision (1) and shall make such list available to the public. Examinations required under this section shall be administered by the department of health services under the supervision of the appropriate examining board. Passing scores shall be established by said department with the consent of the appropriate examining board."

Unlike the statutory requirements for a physician's license, General Statutes (Rev. to 1985) § 16-286[11] requires the DPUC to consider "the existing motor transportation facilities and the effect upon them of granting such certificate, [and] the public need for the service the applicant proposes to render" when determining whether to grant a certificate of public convenience and necessity.

The plaintiffs seek a judicial review of the DPUC's determination that a need for Balkun's certificate exists. If we conclude, as the trial court did, that the plaintiffs' allegations of business competition and diminution in the value of their certificates are insufficient to show aggrievement, the plaintiffs are foreclosed from a judicial review of the agency's findings as to the need for another certificate holder. We find this position untenable since the possibility exists that the alleged loss of business and diminution in value of the plaintiffs' certificates would result from competition for which no need exists.

---

[11] "[General Statutes (Rev. to 1985)] Sec. 16-286. CONSIDERATIONS FOR GRANTING CERTIFICATE. In determining whether or not such a certificate shall be granted, the department of public utility control shall take into consideration the existing motor transportation facilities and the effect upon them of granting such certificate, the public need for the service the applicant proposes to render, the suitability of the applicant, or the suitability of the management if the applicant is a corporation, the financial responsibility of the applicant, the ability of the applicant efficiently to perform the service for which authority is requested, the condition of and effect upon the highways involved and the safety of the public using such highways. The department shall take into consideration such recommendations as to motor transportation facilities, or highways, or the effect of granting such certificate upon either of them, or the safety of the public using such highways, as the commissioner of transportation may submit to it in writing within thirty days of the conclusion of the hearing thereon. No such certificate shall be denied solely on the ground that there is an existing rail or motor service. When it appears that no motor common carrier service is being supplied over the route or routes applied for, public convenience and necessity shall be presumed to require operation of such service."

The plaintiffs hold certificates that enable them to operate in a regulated industry. Those certificates, like the business operations that they authorize, have an economic value that is affected by competition in the motor common carrier industry. The plaintiffs' certificates to operate do not entitle them to be free of competition. Because § 16-286 expressly requires the DPUC to consider public need for the services to be rendered by an applicant before granting a certificate, however, existing certificate holders are entitled to be free of competition for which no need has been shown.

The question of whether the DPUC correctly concluded that public need existed for Balkun's proposed service involves the merits of those decisions and is an issue on which we express no opinion, for "[s]tanding is an examination of the parties, not the merits of the action." *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 64, 441 A.2d 68 (1981). Because a possibility exists, however, that the alleged competition and the resulting diminution in value of the plaintiffs' certificates arise from the grant of a certificate for which no public need exists, we conclude that, under this particular statutory administrative scheme, such allegations were sufficient to establish that there is a possibility that the plaintiffs' specific personal and legal interests in their certificates have been specially and injuriously affected by the DPUC's decision.

We further note that the plaintiffs were made parties to the agency proceedings pursuant to § 16-1-17 (c) of the Regulations of Connecticut State Agencies,[12]

---

[12] Section 16-1-17 of the Regulations of Connecticut State Agencies provides: "APPLICATION TO BE DESIGNATED A PARTY

"(a) Filing of petition. Any other person who proposes to be named or admitted as a party to any proceeding shall file a written petition to be so designated not later than five (5) days before the date of the hearing of the proceeding as a contested case.

when it was found that their legal rights, duties or privileges were substantially and specifically affected by the proceedings. Thus at the administrative level, there was a finding that the plaintiff's legal rights, duties or privileges would be affected by the agency's decision regarding the issuance of a certificate to Balkun.

While the plaintiffs' status as parties at the agency level does not constitute aggrievement; *Bakelaar* v. *West Haven,* supra, 66; the trial court should have closely reviewed this administrative finding because many of the elements considered by the agency in granting this status closely track the elements that the court would have to find to determine whether a party is aggrieved. We conclude that given the plaintiffs' allegations and supporting affidavits, these plaintiffs have proved their aggrievement and are entitled to have the opportunity to challenge the merits of the DPUC's decisions.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

"(b) Contents of petition. The petition shall state the name and address of the petitioner. It shall describe the manner in which the petitioner claims to be substantially and specifically affected by the proceeding. It shall state the contention of the petitioner concerning the issue of the proceeding, the relief sought by the petitioner, and the statutory or other authority therefor, and the nature of the evidence, if any, that the petitioner intends to present in the event that the petition is granted.

"(c) Designation as party. The commissioners shall consider all such petitions and will name or admit as a party any person whose legal rights, duties or privileges will be determined by the decision of the commissioners after a hearing, if the commissioners find such person is entitled as of right to be a party to said contested case or that the participation of such person as a party is necessary to the proper disposition of said contested case."