[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, Local 1183, Council 4, AFSCME, AFL-CIO (Local 1183 or the Union), appeals a decision of the defendant Connecticut state Board of Labor Relations (SBLR) dismissing the Union's complaint against the defendant Town of Wallingford (the Town). The SBLR acted pursuant to General statutes 7-471(4). The appeal is brought pursuant to General statutes 4-183. See General statutes 4-471(4)(D), 31-109(d). The court finds the issues in favor of the defendants.
The material facts in the case are essentially undisputed. The plaintiff is an employee organization within the meaning of the Municipal Employee Relations Act (MERA or the Act) and at all relevant times has been the exclusive bargaining representative of a group of employees of the Town.
In 1986 or 1987, the Union filed a grievance with the Connecticut state Board of Mediation and Arbitration (Board of Mediation) regarding the distribution of overtime pay for certain job classifications within the Town under the collective bargaining agreement between the Union and the Town (the Contract). Some employees had been allotted more overtime work, and consequently more overtime pay, than their co-workers in the same job classification. The Board of Mediation issued an award on September 11, 1989, finding a violation of Article 5, Section 14 of the Contract, which provides: CT Page 11321
 All overtime work shall be distributed as equally as possible among employees within classifications during each calendar year provided they are qualified.
The Board of Mediation's award provides, in relevant part, as follows:
 The Town did violate the Contract with regard to the distribution of overtime. The Town shall pay those grievants who would have been entitled . . . the overtime to which they were entitled under the equalizing clause of the Contract.
The Town interpreted the award as follows. First, it added all overtime hours that were actually worked or authorized during the year in each job classification. It then divided the total by the number of employees in the classification. The result was the average amount of actual overtime work during the year per each employee in a job classification; that is, the amount of such overtime work that should have been allotted each employee in order to equalize such work among all the employees. Each employee who received less than the average amount of overtime pay was then paid for the difference between that average amount and the amount he or she actually received.
The Union disputed the Town's method of calculating the amount due the employees. The Union contended that the Board of Mediation's award should be interpreted so that each employee in a job classification would be paid the amount received by the individual who worked the most overtime during the year. By way of illustration, one crew leader worked 284 overtime hours, which was the greatest amount of overtime worked by any employee in that classification during the year. Under the Union's interpretation of the award, every other employee in the crew leader classification should be paid for 284 hours of overtime (minus, of course, any amount received for overtime such employee might actually have worked). Because this interpretation focuses on the employee with the greatest number of overtime hours, rather than an average, it requires payment to others for overtime that was never authorized and never worked. Thus, the greatest number of hours worked by a single crew leader (284) is multiplied by the number of crew leaders (6), the result is 1704 overtime hours, which the Union argues the Town must CT Page 11322 pay. However, that is 585.4 hours more than were actually worked or were authorized during the year.
The Union, believing the Town's method of compensation did not comply with the arbitration award, filed a complaint, dated November 30, 1989, with the SBLR. Refusal to comply with an arbitration award is a prohibited practice under General statutes 7-470(a)(6). By letter dated January 29, 1990, the Union also requested a clarification of the arbitration award from the Board of Mediation. On May 16, 1990, the Board of Mediation issued a "Clarification of Award" pursuant to Section 31-91-50 of the Rules and Procedures of the state Board of Mediation and Arbitration (the Rules) which clarification provides in relevant part:
 Each person in each classification should be awarded the same amount of overtime at the end of the year as the top person in his classification. Overtime situations occur throughout the year. The Town should equalize it by offering it on a rotating basis to all employees within a given classification. If the employee refuses because he does not wish to take advantage of the overtime opportunity or he is unable to perform the overtime work then he will be charged with the hours.
The Town continued to maintain that its method of compensation complied with the original award.
The SBLR held a hearing on the Union's complaint on February 5, 1991, after the Board of Mediation had issued its clarification. By decision dated March 31, 1992, the SBLR found no violation of the Act based on the original award, found that the clarification was without legal effect, and dismissed the Union's complaint. This appeal ensued.
The Union has a specific, personal and legal interest in the subject matter of the SBLR's decision in that it involves the legal rights and duties of the Union under the Contract and the Act. Also, the Union's legal interest has been specially and injuriously affected in that the SBLR ruled in favor of the Town and against the Union. Therefore, the Union is aggrieved. Light Rigging Co. v. DPUC, 219 Conn. 168, 173
(1991). CT Page 11323
The case presents two issues for disposition by this court. The first is whether the Board of Mediation had the power to issue the "clarification" eight months after it had issued the original award. Secondly, did the SBLR correctly conclude that the Town had complied with the terms of the award; either "clarified" if the clarification was valid, or as the award was originally phrased if the clarification was invalid?
The Board of Mediation's "clarification" was issued in response to the Union's specific request. The procedure is authorized by Regulations of state Agencies 31-11-50, which reads as follows:
Sec. 31-91-50. Clarification of an award
 Any request by either party for a clarification of an award shall be forwarded to the secretary of the board for transmittal to the panel and notice of such a request will be given to the non-requesting party. The response to such a request will be made by the panel.
On the basis of this regulation, the court concludes that the Board was empowered to issue the clarification in this case. The defendants' citation of City of New Haven v. Local 3144, No. 2462329 (Superior Court, New Haven, J.D., June 11, 1986, Fracasse, J. ) is not persuasive. In that case, neither party had initiated the clarification procedure in the regulation by requesting the Board for one. Accordingly, the court held that the Board could not act suo moto and that, instead, its original award must stand under the common law rule of "functus officio." The situation is materially different in the present case. Here, the Union requested and the Board responded, as its regulation required.
The basic issue in this case, of course, is whether the Town correctly followed the terms of the Board's award. since the Board's action was confined to enforcement of the Contract between the Town and the Union, the award and the Town's attempt to comply with it must be analyzed in the context of the relevant Contract provision. As indicated above, the Contract provides that "[a]ll overtime work shall be distributed as equally as possible . . . ." (Emphasis added.) In the court's view, this provision is not ambiguous CT Page 11324 or unclear in any way. It simply means that overtime work in a particular job classification, which the Town needs and authorizes, must be divided as equally as possible among the employees in that classification., The controlling factor is the amount of such work available.
The Board's original award was likewise unambiguous. It simply said that the Town must pay eligible employees — i.e., those who were in job classifications in which overtime work had been authorized — the amount of overtime pay that they would have received if that work had been distributed equally in accordance with the Contract. Again, the controlling factor is the amount of such work that was available.
The Town's method of complying with the award and the Contract precisely fit the plain requirements of each. It calculated the amount of actual overtime work available that would have been allotted to each employee if that work had originally been distributed equally. It then paid any employee the difference, if any, between the equal share allotment and the amount the employee had actually received. Of course, the Town could not recoup any amounts from employees who had received more than their equal share of overtime pay because they had actually worked the commensurate excess hours. So even the Town's method of complying with the Contract and the award would result in an inflated overtime payment because the compensatory payments to those who had been treated unequally would be in addition to the amounts already paid to those who had actually done the work.
The Board's "clarification" provides the only support for the Union's theory that the award should be interpreted to pay everyone the same as the individual who performed the greatest amount of work. However, in this court's view, that theory suffers from three fundamental flaws and must be rejected.
The first defect in the Union's theory is that it is based on an artificially inflated overtime work figure, produced by multiplying the hours worked by the single employee in a classification who worked the most hours times the number of eligible employees. This method of calculation ignores the plain words of the Contract which establish the actual amount of overtime work hours as the controlling CT Page 11325 factor in the equation,
The second flaw in the Union's theory is that it leads to an entirely bizarre result; that is, the Town would be required to pay for vast amounts of overtime hours that were never authorized and never worked by any employee. While the Town's formula necessarily results in some inflation, as discussed above, the Union's theory carries that inflation to an extreme which is not rational, fair, or necessary.
Finally, the Union's argument that its interpretation of the award is the only logical consequence of the Board of Mediation's clarification cannot be sustained. The SBLR has offered an alternative interpretation of the clarification that is reasonable; that is, that its purpose, as revealed by its conditional and nonmandatory language, is to provide a guideline for the correct allocation of overtime work in the future. Inasmuch as the Board of Mediation's original award was clear, as is the Contract itself, the Board did not have the power to change the substance of its award. Its "clarification", therefore, cannot have the effect of changing the plain meaning of the Contract and the original award. city of New Haven v. Local 3144, supra. Presumably, however, there is nothing to prohibit the Board from clarifying how the underlying principles it followed in making the award should guide the Town in allocating overtime work in the future.
For all of the above reasons, the court holds that the SBLR was correct in affirming the Town's method of complying with the award and dismissing the Union's complaint.
The Union's appeal is dismissed.
Maloney, J. CT Page 11326