[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Commission on Human Rights and Opportunities which dismissed the plaintiff's age and race discrimination complaint against Electric Boat.
The following facts are undisputed or reflected in the record. The plaintiff, a black male whose date of birth is August 17, 1936, was employed as a forman [foreman] at Electric Boat (hereinafter "EB"), a division of General Dynamics Corporation. The plaintiff was accused of sexually harassing a female who worked at the Canteen Corporation which is located on EB's premises. After an internal company investigation, the plaintiff was discharged on October 22, 1992 for violation of company rules.
The plaintiff filed a complaint with the CT Page 6219-i Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO") on December 27, 1991, which he amended on March 10, 1992, claiming that he was impermissably [impermissibly] discharged because of his race and because of his age in violation of Connecticut General Statutes 46a-60(a)(1) (Return of Record (ROR) Item 99).
A CHRO investigator undertook an investigation of the plaintiff's complaint, and thereafter the plaintiff was given fifteen days to review and comment upon the investigator's case file. On May 29, 1992 the plaintiff made oral comments regarding the investigator's findings. (ROR 18). On June 4, 1992 the investigator issued findings of fact and a finding of no reasonable cause and dismissed the plaintiff's complaint against EB. (ROR 6-10):
(1) The plaintiff was targeted for layoff due to a reduction in work force. The target date for the layoff was October 21, 1991. The plaintiff had regression bumping rights and could bump back to an hourly first class.
(a) plaintiff admitted he ranked fourteenth out CT Page 6219-j of fifteen supervisors.
(2) On September 18, 1991, respondent received a complaint of sexual harassment from a female employee of Canteen Corporation working on EB's premises. The employee identified plaintiff as the person who had sexually harassed her including touching and kissing her.
(3) From September 19, 1991 through September 23, 1991 EB'S Security Division investigated the sexual harassment complaint.
 (a) plaintiff admitted in his statement to EB's security division that he hugged the woman in question from behind and kissed the back of her head.
 (b) other witnesses noted in EB's investigation that sex came up "in every conversation with women" and plaintiff.
(4) On October 8, 1991, representatives from EB's CT Page 6219-k salary administration department again interviewed plaintiff. Plaintiff made inconsistent statements concerning the sexual harassment incident.
(5) EB's Salary Administration Rep., Cheryl Stergio, recommended that plaintiff be discharged on October 16, 1991. On October 16, 1991 the plaintiff's supervisor, Mr. Sullivan, wrote a memorandum to Cheryl Stergio indicating that discharge was an inconsistent discipline. The supervisor noted that other white supervisors in plaintiff's division had received only suspensions for similar offenses, one in 1982 and one in 1983. Sullivan noted that there were "other factors associated with this incident that must be considered."
 (a) plaintiff identified one other white male whom he alleged was not discharged for sexual harassment in the "late eighties."
(6) EB's policy on sexual harassment, which was promulgated on January 19, 1990 and October 19, 1990, defines CT Page 6219-l sexual harassment. EB's policy states that harassment violates EB's commitment to "treat one another fairly and with the dignity and respect due all human beings . . . ." and "will result in appropriate sanctions."
(a) three persons at EB all identified discharge as the discipline of choice in sexual harassment cases. Plaintiff knew of EB's policy.
(b) Mr. Sullivan could not provide any mitigating factors that EB should consider except that the claimant was out of his work area at the time of the incident.
(7) EB identified two white salaried persons, aged 38 and 41, who were terminated subsequent to plaintiff for violation of the EB's sexual harassment policy.
(8) On March 10, 1992 Appeals Referee for the State of Connecticut Employment Security Appeals Division concluded that plaintiff was discharged for reasons other CT Page 6219-m than wilfull misconduct, and awarded plaintiff unemployment benefits.
The investigator then analyzed the above stated findings of fact and determined that there is insufficient evidence for a person of ordinary caution, prudence and judgment to conclude that EB discriminated against the plaintiff. The investigator based this decision on the following reasoning (ROR 6-10).
(1) It is not disputed that plaintiff was targeted for layoff from his supervisory position, but this act became moot once EB had determined that the plaintiff hugged and kissed an employee who worked on EB's premise. The plaintiff later aggravated the situation when he tried to recount his earlier statement to EB, and again to the investigator. Further, plaintiff knew of EB's sexual harassment policy.
(2) EB's policy calls for an appropriate sanction on an employee who it deems sexually harasses another employee. EB has determined that the appropriate sanction is CT Page 6219-n termination and EB has terminated at least two younger employees for similar reasons subsequent to plaintiff.
(3) The Employment Security Appeals Referee did not render any decision regarding the hug and kiss and was not concerned with discrimination.
The CHRO, by its Acting Eastern Regional Manager, notified the plaintiff that his complaint was being dismissed upon the finding of no reasonable cause by letter dated June 9, 1992. (ROR 5).
The plaintiff filed a timely appeal from this decision on July 16, 1992. The plaintiff argues that the CHRO acted illegally, arbitrarily and in abuse of its discretion because it based its finding of no reasonable cause on an inadequate investigation. Furthermore, the plaintiff argues that the decision is not supported by substantial evidence.
The CHRO and EB filed briefs in opposition to the plaintiff's appeal. CT Page 6219-o
AGGRIEVEMENT
Plaintiff claims that EB has discriminated against him on the basis of his age and race in violation of General Statutes 46a-60(a)(1). "[A]ny complainant aggrieved . . . by the dismissal of his complaint by the commission [of Human Rights and Opportunities may appeal therefrom in accordance with section 4-183 . . . ." General Statutes 46a-94a. Aggrievement is established if there is a possibility that some legally protected interest has been adversely affected. Light Rigging Co. v. Department of Public Utility Control, Conn. 168, 173, 592 A.2d 386 (1991).
The plaintiff claims that EB has discriminated against him in violation of General Statutes 46a-60(a)(1). Because the CHRO dismissed the plaintiff's complaint, the plaintiff's legal interest has been specifically and injuriously affected by the decision. Therefore, the court finds that the plaintiff is aggrieved.
SCOPE OF REVIEW CT Page 6219-p
The trial court's review of an administrative agency's decision is limited in scope and is governed by the Uniform Administrative Procedures Act (UAPA). See Connecticut Light Power v. Department of Public Utility Control, 219 Conn. 51, 57-58, 591 A.2d 1231 (1991). Under General Statutes 4-183(g) the court must sustain an agency's decision if it is supported by substantial evidence and the determination of issues of fact by the administrative agency should be upheld if the record before the agency affords a substantial basis of fact from which the fact in issue can be reasonably drawn. Miko v. Commission on Human Rights 
Opportunities, 220 Conn. 192, 200-201, 596 A.2d 396 (1991). In making this determination, the court must "defer to the agency's assessment of the credibility of the witnesses." (Citations omitted). Id., 200.
DISCUSSION
General Statutes 46a-60 provides that:
(a) It shall be a discriminatory practice CT Page 6219-q in violation of this section:
 (1) For an employer, by himself or his agent, . . . to refuse to hire or employ or to bar or discharge from employment any individual . . . because of the individual's race, color, religious creed, age, . . . .
A person who believes that they are the subject of an alleged discriminatory practice may file a complaint with the CHRO. General Statutes 46a-82. Thereafter, the executive director of the commission shall refer the complaint to an investigator to "investigate to determine if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. . . . As used in this section and in section 46a-84, reasonable cause means a bona fide belief that the material issue of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint." General Statutes 46a-83(a). CT Page 6219-r
The plaintiff bases his argument that the CHRO wrongfully dismissed his complaint on three grounds: (1) the plaintiff did not violate EB's policy because the alleged victim of sexual harassment was not an employee of EB, 2) the CHRO investigator did not adequately investigate the plaintiff's claim and; 3) other white EB employees were not discharged for violation of EB's sexual harassment policy.
The plaintiff submits that EB's policy regarding sexual harassment, as found by the CHRO investigator, is as follows: "Any employee who sexually harasses another employee will be subject to appropriate disciplinary action up to and including discharge." (ROR 42). The plaintiff claims that he did not violate EB's policy because the investigator found that the alleged victim was an employee of the Canteen Corporation working on EB's premises and not an employee of EB. (ROR 7).
EB argues, in its memorandum, that the plaintiff's interpretation of EB's policy is erroneous and would result CT Page 6219-s in "open season" upon all employees who work on EB's premises but are not actual employees of EB. Furthermore, EB argues that the policy as a whole should be considered. EB points to other communications to employees which refer to victims of sexual harassment as "persons" or "individuals not "employees." (ROR 42, 43, 44).
The CHRO argues, in its memorandum, that it is not for the CHRO to sit as a "super-personnel director" and second guess EB's interpretation of its own rules. The CHRO submits that because most employment is terminable at will, its function is not to determine whether there was sufficient evidence to terminate the plaintiff, but whether EB reasonably applied its sexual harassment policy to this case. The CHRO, through its investigators, has the power to "make findings of disputed issues of material fact by drawing inferences." (Footnote omitted.) Adriani v. Commission on Human Rights and Opportunities, 220 Conn. 307, 317,596 A.2d 426 (1991). "[T]he power of the commission, through its investigators, to make findings of material fact as a part of the reasonable cause determination, and the trial court's CT Page 6219-t obligation to review such findings, under the substantial evidence standard is conditional upon the commission having conducted a thorough investigation of the claim." Adriani, supra, 319.
Regarding the disciplinary action taken, the CHRO investigator interviewed three EB employees who held supervisory positions who stated that they felt discharge was the appropriate sanction for violation of EB's sexual harassment policy. (ROR 8). The CHRO investigator found that discharge was appropriate based upon these interviews.
Regarding the plaintiff's disparate treatment claim, the CHRO investigator based its decision that no disparate treatment was present upon data submitted by EB which indicated since the promulgation of EB's sexual harassment policy in 1990 two white males, ages 38 and 41, were discharged from their employment for a violation of this policy. (ROR 8, 26). This data was in the form of a statement by Mr. Everett, EB's Human Resource Specialist, that two white males were terminated subsequent to the CT Page 6219-u plaintiff. Mr. Everett stated these employee's employee numbers and their age. (ROR 26).
While it is true that the CHRO does not serve as a "super-personnel director," the CHRO has a duty to determine whether the plaintiff was subject to illegal discrimination when he was discharged from his employment. Although the CHRO may not be concerned with EB's interpretation of its own policy, it must determine whether EB's interpretation was applied reasonably and fairly. In order for the CHRO investigator to determine whether EB reasonably applied its sexual harassment policy he necessarily would have had to examine how the policy has been applied in the past, to whom and in what manner. If, for example, in the past EB had not interpreted its policy to apply to nonemployees of EB, then to do so now would be indicative of disparate treatment.
Although the CHRO investigator may make credibility and factual determinations, the investigator's determination that no disparate treatment occurred based solely upon a statement made by an EB employee who merely recited employee CT Page 6219-v numbers does not constitute an adequate investigation of the plaintiff's claims.
As Justice Borden stated in Adriani v. CHRO, supra, 331 (J. Borden, concurring in part and dissenting in part) "dismissal of a claim on the basis of a determination of no reasonable cause, without a hearing, effectively ends the claimant's quest for justice." Therefore, "[t]he grant of such power to the CHRO carries with it the heavy obligation to treat each claim with the utmost seriousness and to conduct a thorough investigation. The failure to do so requires that the dismissal of a claim be reversed. General Statutes 4-183(j)(6) and (k)." Hefti v. CHRO,8 Conn. L. Rptr. 175 (January 13, 1993).
As such, the plaintiff was entitled to have a thorough review of his claim. Because the CHRO investigator did not examine EB's past application of its sexual harassment policy the plaintiff did not receive the thorough review of his claim to which he was entitled. Therefore, the plaintiff's appeal is hereby sustained and the CHRO's CT Page 6219-w dismissal is reversed and remanded for further investigation.
Hurley, J.