[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Technical Coatings Laboratory, Inc. (TCL) appeals a declaratory ruling of the defendant Timothy Keeney, Commissioner of Environmental Protection, holding that methyl ethyl ketone to be distilled (MEK-TBD), a material used by the plaintiff in manufacturing coating products, is subject to regulation by the state as a hazardous waste. The Commissioner issued his ruling pursuant to General Statutes 4-176. This appeal is brought pursuant to General Statutes 4-183. The Connecticut Business and Industry Association (CBIA) was granted leave to intervene as a plaintiff in this appeal. The court finds the issues in favor of the defendant Commissioner.
Certain essential facts are undisputed and provide the basis for the plaintiff's appeal. Methyl ethyl ketone (MEK) is used by the plaintiff as a raw material ingredient in the production of paints, inks and other coatings. It is also used to wash the coating cylinder. After the MEK is used to wash the coating cylinder, it is collected in fifty-five gallon steel drums which are labeled with the date on which collection of the material begins. These drums are then taken to a staging area to await distillation. The MEK awaiting distillation is known as "MEK-TBD," or methyl ethyl ketone to be distilled. One fifty-five gallon drum of MEK-TBD is usually generated each day, but the generation rate depends on the number of ink color changes on the coating machine each day. Within twenty-four hours of generation, the drums are moved to a bermed area in the ink room of the plant, where the still is located. The drums of MEK-TBD are stored in this area until the company is ready to begin the distillation CT Page 21 process. The period of time that any one drum of MEK-TBD is held in storage varies from fourteen hours to two weeks, but the average storage time is one week. The MEK-TBD is then transferred to the still for distillation. The distillation process revitalizes the MEK so that it may be returned for use in the manufacturing process.
The basic issue underlying this appeal is the proper classification and handling of MEK-TBD, under applicable law and regulations, while it is being stored and distilled, prior to being returned for use in TCL's manufacturing process. To settle this issue, TCL filed a petition for a declaratory ruling with the Commissioner, pursuant to Conn. Dept. Reg. 22a-3a-1(c). In its petition, TCL sought the following rulings:
 1. TCL's MEK-TBD is not a "waste" and is not subject to regulation as a solid waste or a hazardous waste under state regulations (RCSA 22a-449(c) — 100 through 110).
 2. TCL's MEK-TBD is a recyclable material and is properly regulated as such pursuant to RCSA 22a-449(c) — 101(c).
 3. TCL's MEK-TBD and the equipment used by TCL in reclaiming its MEK is exempt from the provisions of subdivision (3) of 22a-449(c) — 101(c) by virtue of the provisions of RCSA 22a-449(c) — 101(c)(4).
 4. Although the term "recyclable material" may include wastes, in this case, TCL's MEK-TBD is subject to state regulation by virtue of the Commissioner's authority to regulate the recycling of "chemical liquids" (CGS 22a-448(1) not on the basis that MEK-TBD is a hazardous waste; nor would the imposition of requirements to comply with any of the provisions of 22a-449(c) — 100 through 22a-449(c) — 110, by virtue of the Commissioner's authorities under 22a-449(c) — 101(c) operate to render TCL's MEK-TBD a hazardous waste.
On July 31, 1992, after obtaining additional information from TCL, the Commissioner issued a declaratory ruling which essentially denied each of TCL's requests. In his CT Page 22 ruling, the Commissioner held as follows: (1) MEK-TBD is a solid waste; (2) MEK-TBD is a recyclable material subject to regulation under Conn. Dept. Reg. 22a-449(c) — 101(c); (3) MEK-TBD is not exempt from regulation under Conn. Dept. Reg. 22a-449(c) — 101(c)(4); and (4) MEK-TBD is subject to regulation pursuant to General Statutes 22a-448 and 22a-449(c). The consequences of this declaratory ruling for TCL are that the company will have to label, store, and handle the MEK-TBD as hazardous waste in compliance with Conn. Dept. Reg. 22a-449(c) — 102. TCL will also have to comply with the annual reporting and registration requirements of Conn. Dept. Reg. 22a-449(c) — 101(c)(3).
On August 18, 1992, TCL filed a petition for reconsideration. On September 22, 1992, the Commissioner denied the petition for reconsideration.
The undisputed facts recited above establish that TCL is aggrieved by the defendant Commissioner's ruling within the meaning of General Statutes 4-183. See Light Rigging Co. v. Dept. of Public Utility Control, 219 Conn. 168,592 A.2d 386 (1991).
TCL claims that the Commissioner erred in his interpretation of state and federal law. More specifically, TCL asserts that MEK-TBD is not a solid waste, because, based on federal case law, MEK-TBD is not "discarded" TCL further asserts that based on 40 C.F.R. § 261 as incorporated into the Connecticut regulations in22a-449(c) — 101, MEK-TBD is not a "waste," nor is it "spent material." TCL claims, therefore, that the Commissioner has no authority to regulate it as a waste. TCL also claims that the Commissioner erred in holding that the distillation equipment used to recycle MEK-TBD is not "an essential part of an industrial production process" and is therefore not exempt from the registration and annual reporting requirements of Conn. Dept. Reg. 22a-449(c) — 101(c)(3) pursuant to Conn. Dept. Reg. 22a-449(c) — 101(c)(4).
The claims of the parties in this case involve conflicting interpretations of federal and state statutes and regulations as applied to a highly technical manufacturing process. They also raise policy questions concerning the extent of the government's role in regulating business and protecting the environment. These CT Page 23 issues lead the court to focus initially on its proper role in reviewing the actions of governmental agencies in such cases.
"[T]he usual scope of a court's review of administrative action is quite limited." Starr v. Commissioner of Environmental Protection, 226 Conn. 358,371, 627 A.2d 1296 (1993) (Citations omitted). In this regard, General Statutes 4-183(j) provides, in relevant part, as follows:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
It is not the function of the trial court "to retry the case or to substitute its judgment for that of the administrative agency." Griffin Hospital v. Commission on Hospitals Health Care, 200 Conn. 489, 496, 512 A.2d 199
(1986) (Citations omitted). "Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Id.
Even with respect to the interpretation of statutes and regulations, the court's role is limited. "Although the interpretation of statutes is ultimately a question of law; . . . it is well established practice . . . to `accord great deference to the construction given [a] statute by the agency charged with its enforcement.'" Starr v. Commissioner of Environmental Protection, supra, 372 (Citations omitted) (Emphasis added). "This principle CT Page 24 applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v. Commission on Hospitals Health Care, supra, 497. This deference principle does not mean that the court must abdicate its adjudicative function in interpreting statutes and regulations, but it does mean that where there are two equally plausible interpretations of a statute or regulation the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner of Environmental Protection supra, 376
Under Subtitle C of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq. (RCRA), the federal Environmental Protection Agency (EPA) has established a program for overseeing the safe generation, transportation, treatment, storage and disposal of hazardous waste. Under Connecticut General Statutes 22a-449, the Connecticut Commissioner of Environmental Protection is authorized to establish such programs and adopt and enforce such regulations as he deems necessary to carry out the intent of Subtitle C of the RCRA. The applicable state regulation, 22a-449(c) — 101(a)(1), incorporates by reference the federal regulations promulgated by the EPA in 40 C.F.R. Part 261.
Title 40 C.F.R. Part 261 "identifies those solid wastes which are subject to regulation as hazardous wastes."40 C.F.R. § 261.1(a). The definition of solid waste contained in Part 261 "applies only to wastes that also are hazardous for purposes of the regulations implementing Subtitle C of RCRA." 40 C.F.R. § 261.1(b)(1). The essence of the Commissioner's decision is his conclusion that MEK-TBD is a solid waste and is also subject to regulation as a hazardous waste. A "solid waste" is defined as "any discarded material" that does not fall within enumerated exclusions. 40 C.F.R. § 261.2(a)(1). It is undisputed that MEK-TBD does not fall within those exclusions. A "discarded material" is defined as any material which is "abandoned," "recycled" as explained in paragraph (c) of 261.2, or is "considered inherently waste-like."40 C.F.R. § 261.2(a)(2). Paragraph (c) of 261.2 provides that materials are solid wastes "if they are recycled — or accumulated, stored, or treated before recycling — as specified in paragraphs (c)(1) through (4) of this CT Page 25 section." 40 C.F.R. § 261.2(c). Paragraph (c)(3) provides that materials noted with a "*" in column 3 of table 1 are solid wastes when "reclaimed." 40 C.F.R. § 261.2(c)(3). A material is "reclaimed" if it is "processed to recover a usable product, or if it is regenerated. Examples are . . . regeneration of spent solvents.40 C.F.R. § 261.1(c)(4). TCL concedes that MEK-TBD is a "reclaimed" material. The Commissioner concluded that MEK-TBD is a "spent material" which is a solid waste when reclaimed, as noted with a "*" in column 3 of table 1. A "spent material" is defined as "any material that has been used and as a result of contamination can no longer serve the purpose for which it was produced without processing."40 C.F.R. § 261.1(c)(1).
The Commissioner based his conclusion that MEK-TBD falls within the definition of "discarded material" on his interpretation of the federal cases that discuss the meaning of "discarded" under RCRA. See American Mining Congress v. EPA, 824 F.2d 1177 (D.C. Cir. 1987) (AMC I); American Petroleum Institute v. EPA, 906 F.2d 729 (D.C. Cir. 1990) (API); American Mining Congress v. EPA, 907 F.2d 1179
(D.C. Cir. 1990) (AMC II). In the two later federal cases, the court noted that the term "discarded" is "marked by the kind of ambiguity demanding resolution by the [EPA's] delegated lawmaking powers." AMC II, supra 1186, citing API, supra, 740-41. In AMC II, the court noted that "if Congress has not directly spoken to the precise issue, then [the court] will defer to the agency's reading of the statute as long as it is `permissible,' . . . that is, `so long as it is reasonable and consistent with the statutory purpose.'" (Citation omitted.) AMC II, supra citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694
(1984).
In AMC I, the court held that spent materials which are "reused and recycled in a continuous, ongoing manufacturing or industrial process" are not "discarded" under the RCRA definition of solid waste. (Emphasis in original.) AMC II, 1186. The court reasoned that such materials could not be treated as solid wastes because "they have not yet become part of the waste disposal problem; rather, they are destined for beneficial reuse or recycling in a continuous process by the generating CT Page 26 industry itself." (Emphasis in original.) Id.
In AMC II, the court noted that AMC I "concerned only materials that are `destined for immediate reuse in another phase of the industry's ongoing production process.'" (Emphasis in original.) AMC II, supra. The court in AMC II held that certain sludges which are stored for possible future reclamation are "discarded" within the meaning of RCRA.
In this case, the Commissioner found that TCL's use and handling of MEK-TBD is most closely analogous to the facts presented in AMC II because TCL stores, labels, and transfers the MEK-TBD prior to distillation. The Commissioner further reasoned that the MEK-TBD is not immediately reused in another phase of the company's ongoing production process, as was the case in AMC I, but rather it is reclaimed before being reintroduced into that process. As indicated above, the evidence presented by TCL shows that MEK-TBD is stored for up to two weeks prior to being distilled and that the average storage time is one week.
As noted above, the court must defer to the expertise of the Commissioner in interpreting and applying the statutes and regulations which he is charged with enforcing so long as his interpretation and application of those statutes and regulations to the facts of the case are reasonable. See Starr v. Commissioner of Environmental Protection, supra; All Brand Importers v. Department of Liquor Control, supra. The fact that MEK-TBD is stored for a significant period of time prior to distillation and reintroduction into the manufacturing process is obviously supportive of the Commissioner's conclusion that this fact pattern is more similar to that which was present in AMC II than that in AMC I. This conclusion, which the court finds to be reasonable, in turn supports the Commissioner's interpretation of the term "discarded" and his application of the relevant statutes and regulations in accordance with the rule of AMC II rather than AMC I. Accordingly, this court must defer to the Commissioner's interpretation even though TCL and CBIA advance a different, plausible interpretation.
The Commissioner also concluded that MEK-TBD is a CT Page 27 "spent material" because TCL does not use it in the manufacturing process without first distilling it. TCL claims that because it could reuse the MEK-TBD without distilling it and because it simply chooses to recycle it to create a higher quality product, the MEK-TBD should not be considered a "spent material." The Commissioner's conclusion in this regard, however, is based on TCL's own claim that it distills the used MEK-TBD so that it can produce the higher quality product that it chooses to do. The court concludes that the Commissioner reasonably determined that MEK-TBD is "spent material" because it cannot be used for the same purpose for which MEK is used without prior distillation.
The Commissioner also concluded that TCL was not exempt from the reporting and registration requirements of Conn. Dept. Reg. 22a-449(c) — 101(c)(3). Under 22a-449(c) — 101(c)(4), the requirements of 22a-449(c) — 101(c)(3) do not apply to recycling equipment that is "an essential part of an industrial production process of the facility that generates the recyclable materials." The Commissioner found that the term "essential" implies that the manufacturing process could not continue without the operation of the recycling equipment. Such a production process would be a totally enclosed recycling system, in which spent solvents were regenerated and reintroduced immediately into the industrial production process, without prior storage, through a system of connected piping. In this case there is no evidence that TCL could not continue its manufacturing process without the operation of the distillation equipment. In fact, the evidence is to the contrary. It was, therefore, reasonable for the Commissioner to conclude that the distillation equipment is not "essential" to TCL's manufacturing process. It follows that the disputed reporting and registration requirements apply to this equipment.
In their briefs to the court and in oral argument, the plaintiffs eloquently express the view that the Commissioner's interpretation of the statutes and regulations impose unreasonable burdens on the plaintiff's business in particular and on economic development in the state in general. Thus, plaintiff TCL points out that the Commissioner's ruling, with its consequent extra storage, registration, and reporting requirements, creates a CT Page 28 disincentive to recycle the used MEK. The company claims that if it did not recycle the MEK, however, it would use 130,000 gallons more each year. With regard to the economic effects of the ruling, TCL states that "the Commissioner does not appreciate how deleterious any excessive regulatory burdens can be to a company struggling to survive in today's economic environment." In the same vein, plaintiff CBIA argues that the Commissioner's ruling "will lead to unnecessary, costly, burdensome and wasteful results."
The force of the plaintiffs' economic and policy arguments is undeniable, especially in the context of the facts of this particular case. However, the court has no reason to believe that the Commissioner has not considered these arguments in arriving at his decision. Furthermore, it is not the proper role of the court to overrule the judgment of an administrative agency on matters of policy which are within the jurisdiction of that agency. Such policy judgments are to be made, or reversed, only by the agency involved or by the legislature.
For all of the reasons set forth above, the appeal is dismissed.
Maloney, J.