[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTIONS TO DISMISS #101 AND 103
The introduction to the plaintiffs Memorandum in Opposition to the City of New Haven's Motion to Dismiss in this matter states that "[t]this case of first impression will decide whether the courts will compel regional planning commissions to obey their statutory mandate to protect the public from destructive development." For the reasons set forth below, so portentous a decision will have to be deferred to another day.
This case arises out of an effort to construct a regional shopping mall in the Long Wharf area of the City of New Haven. On January 20, 1999, the Connecticut Post Limited Partnership, which operates what would be a competing mall in the City of Milford, filed a complaint, subsequently twice amended, against the "South Central Connecticut Regional Council of Governments,"[1] the "South Central Connecticut Regional Planning Commission"[2] and the City of New Haven, seeking declaratory, injunctive and mandamus relief.
To put the issues addressed by this Memorandum of Decision in their proper context, it may be worth spelling out the plaintiffs claims in some detail. Connecticut Post's Second Amended Complaint alleges that it is based on the failure of the Regional Planning Commission (the RPC) of the South Central Connecticut Council of Governments (COG) to comply with their clear statutory duty to determine whether the City of New Haven's proposed municipal development Project (the Long Wharf Plan) is in accord with the regional plan of development for the South Central Connecticut Region (the SCC Regional Plan)." (Complaint, ¶ 1) The City's Proposed municipal development project "calls for the development of a large regional mall . . . in the Long Wharf area of New Haven." (Complaint, ¶ 2) Connecticut Post alleges that the City's proposal will need approximately $85 million in state and municipal financing, which is conditioned upon COG and RPC "approval". (Complaint, ¶ 3) It alleges that the RPC could not have fulfilled its statutory duty when it made its finding after 90 minutes of discussion (Complaint, ¶ 4) and that the RPC failed to analyze the "relevant policies and goals and the CT Page 13870 extraordinary impact the Long Wharf plan would have on the regions's economy, transportation system and environment." (Complaint, ¶ 5)
Connecticut Post owns the "Connecticut Post Mall, a shopping center located in Milford, Connecticut." (Complaint, ¶ 7) "Connecticut Post has been constructed and maintained with very substantial private sector investment." (Complaint, ¶ 9) The Regional Council of Governments (COG) "is an agency established under Conn. Gen. Stat. § 4-124c, et seq.[3] Its members are the elected officials of 15 cities and [towns] in South Central Connecticut." (Complaint, ¶ 10) The Regional Planning Commission (RPC), "is a subdivision of the COG established under Conn. Gen. Stat. § 4-124o" (Complaint, ¶ 11)[4], and is charged by that statute "with maintaining a regional plan of development, as described in Conn. Gen. Stat. sec. 8-35a." (Complaint, ¶ 13)[5] The City of New Haven "is a municipality located in South Central Connecticut." (Complaint, ¶ 12) Connecticut Post alleges that, although the regional plan is required to be kept current, pursuant to Connecticut statute, as well as COG by-laws, the regional plan was "last adopted . . . thirty years ago." (Complaint, ¶ 14)
Pursuant to General Statutes § 8-191, the RPC must determine that a municipal development project "is in accord with the plan of development for such region," before the project is eligible for state and municipal financing. (Complaint, ¶ 15)[6] "It is the position of the RPC that the plan of development for the South Central region of Connecticut is comprised of `a 1966 document entitled `Issues, Policies, Strategy,' a 1967 document entitled "The Proposed Comprehensive Plan for the South Central Connecticut Region," and a 1968 document entitled "Proposed Land Use Plan — 2000." (Complaint, ¶ 15) Connecticut Post further alleges that General Statutes § 8-191 "ensures that public funds will not be used to fund municipal development projects inconsistent with regional development goals and policies," and this review "is the only opportunity that regional interests have to ensure that public funds will not be used for private or local interests at the expense of regional interests." (Complaint, ¶ 16, 17) The RPC issued a report in 1990 "stating that new regional mall proposals merit comprehensive review because of the scope and duration of the impact that new regional malls have on the regional economy, transportation systems and environment." (Complaint, ¶ 18) CT Page 13871
By letter dated November 4, 1998, the City of New Haven submitted its proposed municipal development plan to the RPC, seeking "a finding and resolution . . . that the Long Wharf Plan is in accord with the existing SCC Regional Plan of Development." (Complaint, ¶ 19) The geographic area which would be affected by the proposal "encompasses a portion of the Long Wharf area and an area abutting and including a portion of Long Island Sound." (Complaint, ¶ 19) The City's proposed municipal development project was scheduled to be considered at a November 12, 1998 RPC "meeting, but the City withdrew the proposal at some time before the "meeting." (Complaint, ¶ 20) The proposal was submitted to the RPC for a second time on November 24, 1998, and the RPC scheduled it for consideration at a December 10, 1998 meeting. (Complaint, ¶ 21) On December 3, 1998, Connecticut Post "filed with the RPC and COG a Petition to be made an intervenor or a party in the RPC's review of the Long Wharf Plan," or in the alternative, that the RPC declare that the Long Wharf Plan "did not comply with the SCC Regional Plan." (Complaint, ¶ 22).
Connecticut Post claims that, in response to its petition to the RPC, the City "submitted a pleading urging the RPC to limit its consideration to "use," thereby ignoring the Long Wharf Plan's impact on the regional economy, transportation and environment, as well as its social impact and other issues that the RPC is statutorily required to examine." (Complaint, ¶ 23) Connecticut Post alleges that the City's position was that the RPC should not entertain Connecticut Post's petition, nor should it allow public comment at the RPC's "hearing."[7] (Complaint, ¶ 24) it contends that the RPC did not consider correspondence received from the general public, concerning the City's proposal, at the December 10, 1998 "meeting." (Complaint, ¶ 25) and that the RPC "ignored the CT Post application, thereby denying it," at the December 10, 1998 "hearing." (Complaint, ¶ 26) Further, Connecticut Post alleges that "the RPC failed to follow the statutes governing its conduct or to review the criteria set forth in the SCC Regional Plan to determine if the Long Wharf Plan was in accord with the SCC Regional Plan." (Complaint, ¶ 26) the plaintiff argues that the Long Wharf plan did not provide the RPC with sufficient information "to analyze the issues as required by statute and as defined by the SCC Regional Plan." (Complaint, ¶ 27)
The complaint further alleges that "[t]he SCC Regional Plan promotes economic growth without adverse impact on regional communities or the stability of existing retail centers." CT Page 13872 (Complaint, ¶ 28) It claims that "[t]he SCC Regional Plan specifically identifies Connecticut Post as an important regional retail center, integral to regional growth," and that "[b]y recognizing, confirming and encouraging Connecticut Post's central role in the region's successful development, the SCC Regional Plan bound the RPC to consider the impact of municipal development projects on Connecticut Post. The actions of the defendants herein will cause harm to Connecticut Post's financial interest. The Long Wharf Mall will merely redirect existing retail sales, to the detriment of existing regional retail centers, including Connecticut Post and regional municipal business districts. The redirection of retail sales by the heavily subsidized Long Wharf Mall will have a severe financial impact on Connecticut Post." (Complaint, ¶¶ 29-32) Connecticut Post claims that "[t]he Long Wharf Plan did not contain any information from which the RPC could evaluate the Long Wharf Mall's economic impact on the region or on Connecticut Post;" (Complaint, ¶ 33); and that "Conn. Gen Stat. § 8-35a requires the SCC Regional Plan to analyze `highways and freeways.' COG's Proposed Land Use Plan — 2000 stated `[p]roposed highway improvements cannot be considered as separate elements but must be viewed as part of a total circulation system. Obviously, this Agency must play an important role in such studies. . . .'" (Complaint, ¶ 34) The plaintiff alleges that the City failed to present the RPC with a traffic study, and that the RPC ignored the traffic study allegedly presented by Connecticut Post. (Complaint, ¶ 35) In addition, it alleges that the "RPC's December 10, 1998 discussion of, and decision concerning, the New Haven municipal development plan ignored economic, traffic, environmental and social issues." (Complaint, ¶ 36) Connecticut Post alleges that the Long Wharf Mall will create traffic congestion on state roads and on interstate routes 95 and 91, and will adversely affect the region's economy "by impeding the movement of customers, employees, goods and services." (Complaint, ¶¶ 37, 38) Connecticut Post further alleges that, because of its location on Interstate 95, traffic congestion will damage Connecticut Post "by impeding the flow of customers, employees and goods to Connecticut Post." (Complaint, ¶ 39) Connecticut Post's environmental allegations include claims that traffic generated by the mall will "pollute the region's air; [r]un-off from the Long Wharf Mall will pollute Long Island Sound; and, [t]he Long Wharf Mall will constitute an intensive use of a floodplain, which is not permitted by state policies." (Complaint, ¶¶ 40-42). CT Page 13873
Count one of Connecticut Post's complaint alleges that the Long Wharf Plan fails to comply with Gen. Stats. § 8-189. (Count One, ¶ 44)[8] It claims that the City's proposal is in violation of this statute because it does not contain a "plan for relocating project-area occupants," (Count One, ¶ 44.a), a "financing plan," (Count One, ¶ 44.b), a "marketability and proposed land-use study," (Count One, ¶ 44.c), or "appraisal reports and title searches," (Count One, ¶ 44.d.). Connecticut Post contends that "[b]ecause the Long Wharf Plan did not comply with applicable law, both the City of New Haven and the RPC were required by law to reject the plan." (Count One, ¶ 45) Connecticut Post seeks a judgment in Count One, "declaring that the RPC's December 10, 1998 finding that the Long Wharf Plan is in accord with the SCC Regional Plan is null and void and declaring that the Long Wharf Plan is null and void. In addition, Connecticut Post seeks an order directing New Haven to comply with requirements set forth in Conn. Gen. Stat. § 8-189 and directing the RPC to reject any such municipal development plan which does not contain the information required by Conn. Gen. Stat. § 8-189." (Count One, ¶ 46)
Count Two of the complaint alleges that the RPC did not properly carry out its statutory duty, under General Statutes §8-191, to determine whether the Long Wharf Plan is in accord with the SCC Regional Plan because it failed to consider the statutory criteria for regional plans, as set forth in Gen. Stats. § 8-35a. (Count Two, ¶¶ 48-51) Connecticut Post alleges that the RPC could not have considered the statutory criteria because the Long Wharf Plan did not contain this information. (Count Two, ¶¶ 52, 53) In addition, it alleges that the RPC's discussion at the December 10, 1998 meeting did not address this information, (Count Two, ¶ 53) and seeks "an order declaring that the RPC's December 10, 1998 finding that the Long Wharf Plan is in accord with the Regional Plan is null and void, and an order directing the RPC to consider the policies set forth in Conn. Gen. Stat. sec. 8-35a when evaluating the Long Wharf Plan." (Count Two, ¶ 54).
Count Three alleges that the RPC did not properly carry out its statutory duty under Gen. Stats. § 8-191 because it "did not follow the SCC Regional Plan in evaluating the Long Wharf Plan. . . [which] required `careful,' `comprehensive,' and `competent' analysis of all aspects of the Long Wharf Plan." (Count Three, ¶¶ 57, 58) Connecticut Post argues that the RPC did not properly carry out its statutory duty because it "did not CT Page 13874 rely on any studies;" (Count Three, ¶ 58); "[t]here was no analysis of the impact of the proposed mall on other existing retail businesses, including the Connecticut Post Mall"; (Count Three, ¶ 59.a); "[t]here was no analysis of the proposed mall on downtown New Haven"; (Count Three, ¶ 59.b); "[t]here was no analysis of the proposed mall on neighboring towns"; (Count Three, ¶ 59.c); "[t]here was no environmental, storm sewer or air pollution analysis"; (Count Three, ¶ 59.d); and, "[t]here was no traffic analysis." (Count Three, ¶ 59.e) Count Three further alleges that using the Long Wharf location for a shopping center is inconsistent with the Proposed Land Use Plan — 2000, which defines this site as "productive" and not as "service, " and which "indicates that the site for an extra-regional shopping center in New Haven is downtown, not at Long Wharf." (Count Three, ¶¶ 61, 62) Count Three "seeks an order requiring the RPC to consider the matters set forth in paragraph 59 and an order declaring that the Long Wharf Plan is not consistent with the SCC Regional Plan and declaring that the RPC's December 10, 1998 finding that the Long Wharf Plan is in accord with the SCC Regional Plan is null and void." (Count Three, ¶ 63)
Count Four alleges that the RPC violated its statutory duty under §§ 8-35a and 8-191 "to determine whether a municipal development project submitted to it pursuant to Conn. Gen. Stat. § 8-191 promotes the abatement of pollution of the air and water of the region before the RPC finds that the project complies with the SCC Regional Plan . . . because [it] did not determine whether the Long Wharf Plan prevents the pollution of Long Island Sound by hypoxia, pathogens, toxic contaminants and floatable debris prior to its approval of the Long Wharf Plan." (Count Four, ¶¶ 65-68) Connecticut Post further contends that the RPC's "failure to undertake an analysis of the effect that the Long Wharf Plan will have on the natural resources of the region and the State threatens those natural resources with unreasonable pollution, impairment and destruction." (Count Four, ¶ 70) It argues that the construction of and operation of the Long Wharf Mall will create traffic which generate carbon monoxide and ozone, which, "in combination with existing [carbon monoxide and ozone] in the area, will constitute unreasonable pollution of the air." (Count Four, ¶¶ 71, 72) In addition, Connecticut Post alleges that construction of the Long Wharf Mall will create toxic contaminants and debris, which will pollute Long Island Sound as run-off, which "in combination with existing contaminants and debris, will constitute unreasonable pollution of Long Island Sound." (Count Four, ¶ 73) Count Four seeks, CT Page 13875 "[p]ursuant to the Connecticut Environmental Protection Act, Conn. Gen. Stat. §§ 22a-14, et seq., and Conn. Gen. Stat. §§8-35a and 8-191, . . . a judgment declaring that [the] RPC's approval of the Long Wharf Plan is null and void; [a judgment] declaring that the Long Wharf Plan is likely to unreasonably pollute, impair or destroy the natural resources of the State; and, [a judgment] enjoining [the] defendants from approving or financing the Long Wharf Plan." (Count Four, ¶ 74)
The South Central Regional Council of Governments, together with the South Central Regional Planning Commission, and, separately, the City of New Haven, have filed motions to dismiss Connecticut Post's complaint based on their contention that the plaintiff does not have standing to bring this action. For the reasons set forth below, the court agrees that the plaintiff lacks standing and grants the motions to dismiss.
"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Thus, standingdoes not hinge on whether the plaint if will ultimately beentitled to obtain relief in the merits of an action, but onwhether he is entitled to seek the relief . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) Lewisv. Swan, 49 Conn. App. 669, 675, 716 A.2d 127 (1998); see, Gay Lesbian Law Students Association v. Board of Trustees,236 Conn. 453, 463, 673 A.2d 484 (1996).
"[W]ith respect to the law of standing, it is not enough that a party is injured by an act or omission of another party. The defendant must have also violated some duty owed to the plaintiff. Applying this doctrine to challenges of official government action or inaction, the relevant question would not be simply whether the official or agency violated the law, but rather whether the official or agency violated any duty to the plaintiff. . . ." (Citation omitted; internal quotation marks omitted.) Lewis v. Swan, supra, 49 Conn. App. 677.
"With the exercise of discretionary powers [by an agency], courts rarely and only for grave reasons interfere. These grave reasons are found only where fraud, corruption, improper motives CT Page 13876 or influences, plain disregard of duty, gross abuse of power, or violation of law enter into or characterize the result. Difference of opinion or judgment is never a sufficient ground for interference." Whitney v. City of New Haven, 58 Conn. 450,457 (1890) (court refused to enjoin an order to demolish a building, issued by what was then the court of common council of New Haven).
"In considering whether a plaintiffs interest has been injuriously affected by an administrative decision, we have looked to whether the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for its complaint . . . ." (Citations omitted; internal quotation marks omitted.) Med-Transof Conn., Inc. v. Dept. of Public Health Addiction Services,242 Conn. 152, 159, 699 A.2d 142 (1997).
"The zone of interests test was articulated by the United States Supreme Court in Assn. of Data Processing ServiceOrganizations, Inc. v. Camp, . . . 397 U.S. 150. In that case, the petitioners, providers of data processing services to businesses generally, challenged a ruling by the Comptroller of the Currency permitting national banks, such as the respondent bank, to make data processing services available to other banks and bank customers. The Supreme Court held that the petitioners had standing to maintain the action, in part because it concluded that the particular petitioner was a competitor within the zone of interests protected by § 4 of the Bank Service Corporation Act of 1962, 12 U.S.C. § 1864. The petitioners not only alleged that competition by national banks in the business of providing data processing services might entail some future loss of profits for the petitioners, but also that the respondent bank was performing or preparing to perform such services for two customers for whom one of the petitioners had previously agreed or negotiated to perform such services." Id., 152.
"It has been pointed out that the zone of interests test bears a family resemblance to the scope of the risk doctrine in the law of torts. . . . In tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of standing, it is not enough that a party is injured by an act or omission of another party. The defendant must have also violated some duty owed to the CT Page 13877 plaintiff. Applying this doctrine to challenges of official government action or inaction, the relevant question would not be simply whether the official or agency violated the law, but rather whether the official or agency violated any duty to the plaintiff. . . ." (Citations omitted; internal quotation marks omitted.) Lewis v. Swan, supra, 49 Conn. App. 676-77. Where a "plaintiff has failed to cite to any statute, regulation or constitutional guarantee that places him within a protected zone of interests . . . [t]he plaintiff has no standing." Id., 682.
In Med-Trans of Conn., Inc. v. Dept. of Public Health Addiction Services, supra, 242 Conn. 164-65, the plaintiff, a commercial ambulance service, appealed the trial court's ruling that it did not have standing to challenge a decision made by the Department of Public Health Addiction Services. The plaintiff had appealed the department's granting of a license to a competing ambulance service. Our Supreme Court held that the plaintiff did not have standing to challenge the department's granting of the license to the plaintiffs competitor because the relevant statute did not require the department to consider the effects of its actions on competition. The Court's analysis focused on whether the interest sought to be protected was within the relevant statute's "zone of interests."
In United Cable Television Services Corp. v. Dept. of PublicUtility Control, 235 Conn. 334, 663 A.2d 1011 (1995), the plaintiff, a cable television service provider, appealed the trial court's dismissal of its appeal from a decision of the department of public utility control (DPUC). The plaintiffs appeal arose out of the DPUC's granting of a certificate of public convenience and necessity to a competitor of the plaintiff, enabling the competitor to provide competing cable service to customers. The Supreme Court affirmed the decision of the trial court, finding that the plaintiff did not have standing, as the plaintiffs interests were not within the "zone of interests" protected by the statute. The Court held that "[w]e find no support either in the language of the statute or in its legislative history for the proposition that the statutory requirements of [the relevant statute] for granting of a franchise are intended to protect existing franchise holders from potential competitors. Rather, we are persuaded that the legislature, by enacting [the relevant statute], intended to protect the cable consuming public at large from inefficient and ineffective cable service." Id., 347; see also, New England CableTelevision Assn., Inc. v. DPUC, 247 Conn. 95, 105, 717 A.2d 1276
CT Page 13878 (1998) ("Because incumbent franchisees are not representatives of the public, they fall outside the zone of interest to be protected by the statutory provisions of § 16-331, except for subsection (g), which was enacted for their protection").
Conversely, in Light Rigging Co. v. Dept. of Public UtilityControl, 219 Conn. 168, 592 A.2d 386 (1991), the Connecticut Supreme Court ruled that the plaintiff had standing to challenge the DPUC's decision. Although the underlying facts were similar to those in United Cable Television Services, supra,235 Conn. 334, the Supreme Court ruled that the plaintiff had standing to protect its competitive interests because these interests fell within the "zone of interests" of the applicable statute. The court found that "General Statutes. . . § 16-286 requires the DPUC to consider the existing motor transportation facilities and the effect upon them of granting such certificate, and the public need for the service the applicant proposes to render when determining whether to grant a certificate or public convenience and necessity." (internal quotation marks omitted.) Id., 176.
Section 8-35a sets forth the requirements regarding the issues that must be addressed by a regional plan. In addition, the by-laws of the COG require that the SCC Regional Plan be kept "up to date." (Complaint, ¶ 13) Although the environmental considerations found in § 8-35a were added to the statute in 1991,[9] nearly twenty-five years after the adoption of the SCC Regional Plan in the mid-to-late 1960's, the SCC Regional Plan was never amended to reflect these statutory changes. Under those circumstances, the RPC could do nothing more than follow its statutory mandate of finding whether the Long Wharf Plan was in accord with the current regional plan.
The legislative history of the 1991 amendment to § 8-35a
(adding the requirement that regional plans be designed to promote pollution abatement and the requirement concerning the content of plans proposed by municipalities contiguous with Long Island Sound), however, provides that "[t]his bill would helpland use regulations address the issue of pollution on LongIsland Sound . . . by requiring regional planning agencies intheir commentary on any zoning matter referred to it, to considerthe impact of their proposal on the Sound." 34 H.R. Proc., Pt. 12, 1991 Sess., p. 4385. Based on this legislative history, the RPC does have jurisdiction to, and is required to, consider environmental matters. Compare Burton v. Dillman, CT Page 13879
27 Conn. App. 479, 482, 607 A.2d 447, cert. denied, 223 Conn. 904,610 A.2d 178 (1992) ("Because the plaintiffs claim of aggrievement rested on issues that were not within the authority of the Probate Court to decide, the Superior Court lacked jurisdiction to hear her appeal from the Probate Court order."). The transcript of the December 10, 1998 RPC meeting does not provide any evidence that the RPC considered environmental issues affecting Long Island Sound when it made its finding that the Long Wharf Plan was in accord with the SCC Regional Plan. Based on this apparent failure, the plaintiff seeks a judgment invalidating the RPC's finding.
Connecticut Post does not have standing to challenge the failure of the COG to update the SCC Regional Plan so that it will comply with General Statutes § 8-35a or the COG by-laws. Although the express provisions of the statute reveal that municipalities and regional planning agencies are within the statute's "zone of interests," they do not make any reference to competitive interests. "The intent of the legislature, as expressed in § 8-189, is to ensure that municipal development projects are in accord with statewide planning objectives."Manchester Environmental Coalition v. Stockton, 184 Conn. 51, 70,441 A.2d 68 (1981). The language of § 8-189 promotes this end when it sets forth the requirements which must be met by municipal development proposals. No mention of competitor interests is made in § 8-189. It follows, therefore, that municipal development proposals and statewide planning objectives are within the "zone of interests" of § 8-189, while individual business competitors are not.
Similarly, the intent of the legislature, as expressed in §8-191, is to establish a procedure for ensuring that "municipal development projects are in accord with statewide planning objectives." The language of § 8-191, together with the Regulations of Connecticut State Agencies (Department of Economic and Community Development), establishes explicit administrative procedures which must be followed by municipalities and regional planning agencies, with respect to their regional plan of development, before a municipal development plan can be adopted. As was the case with § 8-189, no mention of competitors is made in § 8-191. See General Statutes § 8-191; Regs., Conn. State Agencies §§ 8-198-4, 8-198-6; Manchester Environmental Coalitionv. Stockton, supra, 184 Conn. 54 ("As required by general statutes § 8-191, before [a municipal economic development commission] could adopt [a] plan, the [municipal] planning commission had to find that it was in accord with the plan of CT Page 13880 development for the municipality. The [regional] council of governments had to do likewise for the region.") It follows that § 8-191's "zone of interests" encompasses municipalities, regional planning agencies and regional plans of development, and excludes the interests of business competitors.
The defendants are therefore correct in their argument that the plaintiff foes not have standing on the basis of statutory aggrievement. Connecticut Post's interests are not within the "zone of interests" of General Statutes §§ 8-35a, 8-189 8-191. There is no statutory provision, express or implied, which requires either the City or the Regional Planning Commission to consider the economic interests of competitors, and Connecticut Post cannot establish standing to bring this action under §§8-35a, 8-189 or 8-191.
Although not statutorily aggrieved, however, "a person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal. . . . A party seeking review of a state agency's action, must establish more than aggrievement (injury in fact); he must establish that the injury resulted from a final decision in a contested case. . . ." (Citations omitted; internal quotation marks omitted.) Ardmare Construction Co., Inc. v. Freedman,191 Conn. 497, 503, 467 A.2d 674 (1983); See Rybinski v. State Employees'Retirement Commission, 173 Conn. 462, 467-69, 378 A.2d 547 (1977) (discussing "agency" and "contested case," as those terms are defined in General Statutes §§ 4-166 (1) (2)).[10]
"The test for aggrievement long recognized by this court is set forth in our decision in State Medical Society v. Board ofExaminers in Podiatry, 203 Conn. 295, 524, A.2d 636 (1987). There we stated that the fundamental test for determining aggrievement encompasses a well-settled two fold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected. . . . The determination of aggrievement CT Page 13881 presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. . . ." (Citations omitted; internal quotation marks omitted.) Med-Trans of Conn., Inc. v.Dept. of Public Health Addiction Services, 242 Conn. 152,158-59, 699 A.2d 142 (1997); New England Cable Television Assn.,Inc. v. DPUC, supra, 247 Conn. 103.
"The second prong of the aggrievement test requires the plaintiff to demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law." Med-Trans of Conn., Inc. v. Dept. of Public Health Addiction Services, supra, 242 Conn. 159; New England CableTelevision Assn., Inc. v. DPUC, supra, 247 Conn. 103. "The requirements of [aggrievement] are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. . . . As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great. . . . Where the nexus between the injury and the claim sought to be adjudicated is obvious and direct, a plaintiff has standing to maintain the claim." (Citations omitted; internal quotation marks omitted.) Gay Lesbian Law Students v. Board of Trustees, supra,236 Conn. 463-64.
In United Cable Television Services Corp. v. Dept. of PublicUtility Control, supra, 235 Conn. 334, the Connecticut Supreme Court found that "[t]he plaintiff demonstrated its specific personal and legal interest in the subject matter of the [DPUC's] decision by alleging and proving to the trial court's satisfaction that it was a franchise holder in the area to which the contested franchise applies." Id., 343;[11] See Light RiggingCo. v. Dept. of Public Utility Control, supra, 219 Conn. 173
("[t]he plaintiffs demonstrated their specific personal and legal interest in the subject matter of the DPUC's decision by alleging and providing evidence that their DPUC certificates, for the intrastate operations that they own, authorize them to provide services similar to those that [the competitor's] contested certificate would authorize [the competitor] to provide").[12]
Connecticut Post lacks standing to challenge the failure of the RPC to follow proper procedure, as set forth in § 8-191, because Connecticut Post has not established that this failure caused it to suffer any direct injury to a specific personal and legally protected interest. Connecticut Post has failed to CT Page 13882 demonstrate any specific, personal or legal interest in the Regional Planning Commission's finding that the Long Wharf Plan is in accord with SCC Regional Plan. Even if the court were to find that Connecticut Post had a specific personal and legal interest in the RPC's finding, however, this alone would not confer standing because Connecticut Post has failed to establish that any such interest has been specially and injuriously affected by the RPC's decision. Moreover, the finding was not a "final decision" in a "contested case." The RPC is not an agency, and it made its finding at a meeting. There was no statutory hearing requirement, and no hearing was in fact held.
In addition, Connecticut Post does not have standing to challenge the sufficiency of the Long Wharf Plan, with respect to the statutory requirements of that proposal, as set forth in §8-189. To begin with, the proposal itself cannot reasonably be considered to be a "final decision in a contested case," as defined in General Statutes § 4-166. In addition, the fact that the City's proposal, an "extra-regional shopping center" at the Long Wharf site, would allegedly create business competition for Connecticut Post, is insufficient aggrievement for purposes of standing.[13]
Moreover, even if Connecticut Post were to establish that it has a specific personal or legal interest in the Long Wharf Plan, Connecticut Post has failed to establish that any such interest has been specially and injuriously affected by the proposal. Connecticut Post has thus failed to establish either statutory aggrievement or classical aggrievement by showing that it has a specific personal and legal interest in the SCC Regional Plan or has suffered an "injury in fact" to that interest. Even if this court were to find that Connecticut Post has established a specific personal and legal interest in the Long Wharf Plan or the RPC's finding, Connecticut Post has not established that any such an interest has been harmed by either the proposal or the finding. Moreover, as this was a meeting and not a hearing or a contested case, Connecticut Post does not have standing to question the RPC's decision-making process.[14]
At least at this stage of the administrative process, Connecticut Post does not have standing to contest the adequacy of the Long Wharf Plan, the procedures followed by the RPC or the RPC's finding. The claims made by Connecticut Post concerning the requirements set forth in General Statutes §§ 8-35a, 8-189 and8-191 for proposals for, and approval of, municipal development CT Page 13883 projects may, of course, be raised by Connecticut Post at the statutorily required public hearing which will occur at the next administrative level. General Statutes § 8-191(3).[15]
"[T]he primary purpose of zoning is to protect the public at large, and not the competitive interests of individual developers." Lewis v. Swan, supra, 49 Conn. App. 681. "Absent a claim of unfair or illegal competition, an allegation merely of competition likely to result in lost revenues is ordinarily insufficient to confer standing." (Citations omitted; internal quotation marks omitted.) Lewis v. Zoning Board of the Town ofClinton, Superior Court, judicial district of Middlesex at Middletown, Docket Number 080274 (May 2, 1997, Arena, J.). "Without some particular harm, such as the maintenance of a nuisance affecting the land of a plaintiff or a statute allowing the maintenance of his lawsuit, the plaintiff can have no standing. . . ." (Citation omitted.) Id., 49 Conn. App. 678 (1998) "The plaintiff [has] the burden of proving that it [is] aggrieved. . . . [T]his burden of proof [requires] the plaintiff to establish that it [is] specially and injuriously affected in its property rights or other legal rights. . . . [I]t [is] not sufficient for the plaintiff to show that the action complained of would permit the operation of a business in competition with its business. . . . [Where] all of the evidence offered by the plaintiff to establish a possible adverse effect on the value of its real estate is based on the assumption that its [business] will be forced to close because of this competition, . . . the court [is] correct in concluding that the plaintiff [has] not shown itself to be aggrieved within the meaning of § 8-8 of the General Statutes." Whitney Theatre Co. v. Zoning Board ofAppeals, 150 Conn. 285, 287-88, 189 A.2d 396 (1963); seeNortheast Parking, Inc. v. Planning and Zoning Commission ofWindsor, 47 Conn. App. 284, 297, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998) ("[L]egal business competition, as a matter of law, is insufficient aggrievement [to obtain standing].") "To satisfy aggrievement requirements, the plaintiff must allege a legally protected interest that is concrete and actual, not merely one that is hypothetical. A speculative loss of revenue is insufficient to confer standing and establish aggrievement." (Citations omitted; internal quotation marks omitted.) Lewis v. Zoning Board of the Town ofClinton, supra, Superior Court, Docket Number 080274; see WhitneyTheatre Co. v. Zoning Board of Appeals of the Town of Hamden, supra, 150 Conn. 285 (anticipated business competition and assumption that theater will be forced to close because of this CT Page 13884 competition is insufficient aggrievement).
Connecticut Post has not alleged that the actions of the RPC or the City affect the land on which the Post Mall rests. Nor has Connecticut Post's complaint set forth any direct claims of unfair or illegal competition.[16] Thus, even if the Regional Plan of Development were to be construed by the Court as a zoning regulation, the plaintiff does not have standing to bring the present claims against the RPC or the City of New Haven.[17]
Connecticut Post claims standing under the Connecticut environmental protection act to challenge the Long Wharf Plan, the COG'S failure to update the SCC Regional plan and the RPC's finding. "We are unpersuaded that the legislature intended [in environmental legislation] to create private causes of action to supplement the pervasive regulatory powers of the DEP. . . . [I]nvocation of the EPA is not an open sesame for standing to raise environmental claims with regard to any and all environmental legislation. . . . Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues. . . . [E]nvironmental impacts must be raised before [the] appropriate administrative bodies, if any, or in their absence by the institution of an independent action pursuant to § 22a-16. . . . [Section] 22a-16 [does] not provide plaintiffs with standing under any statute other than the Environmental Protection Act itself." Middletown v. Hartford Electric Light Co.,192 Conn. 591, 596-97, 473 A.2d 787 (1984). In accordance with that reasoning, this court concludes that Connecticut Post does not have standing, pursuant to the Connecticut Environmental Protection Act, to challenge the Long Wharf Plan, the COG's failure to update the SCC Regional Plan, or the RPC's finding that the Long Wharf Plan is in accord with the SCC Regional Plan. See, also, Fish Unlimited, et al. v. Northeast Utilities ServiceCompany et al, 25 Conn. L. Rptr No. 7, 239 (October 18, 1999)
Connecticut Post also lacks standing to raise Connecticut Environmental Protection Act claims at this time because it has not established that a final decision in a contested case has been reached or that the environmental claims raised are ripe for adjudication.
General Statutes § 22a-15 provides: "It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each CT Page 13885 person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction."
General Statutes § 22a-16 provides, in pertinent part, that "[a]ny person, partnership, corporation, association or legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such an action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone or in combination withy others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction. . . ." General Statutes § 22a-16.
"Ripeness is equated with the justiciability of a claim. . . ." (Citation omitted; internal quotation marks omitted.) Thomas v. City of West Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 284555 (March 9, 1994, Martin, J.). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complaint. . . ." (Citation omitted; internal quotation marks omitted.) Mayer v. Biafore, 245 Conn. 88, 91, 713 A.2d 1267
(1998).
The "basic rational [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until and administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen as a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Laboratories v. Gardner, CT Page 13886387 U.S. 136, 148 (1967). "The relevant considerations in determining finality are whether the process of administrative decision making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action. . . . "(Citations omitted; internal quotation marks omitted.) Killingly v. ConnecticutSiting Council, 220 Conn. 516, 520, 600 A.2d 752 (1991). See also, Broadnax v. City of New Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 412193 (September 15, 1998, Pittman, J.) ("There are varying degrees of ripeness"). The environmental issues raised by the plaintiff are not ripe for this court's review.
For all of these reasons, the court concludes that the plaintiff lacks standing to pursue any of the counts of its complaint, and the Motions to Dismiss are therefore granted.
Jonathan E. Silbert, Judge