## WALTER LEWIS *v.* BARBARA SWAN ET AL.
## (AC 16315)

O'Connell, C. J., and Dupont and Shea, Js.

Argued November 3, 1997—officially released August 11, 1998

*Norman J. Voog*, with whom, on the brief, was *Christopher J. Molyneaux*, for the appellant (plaintiff).

*Robert A. Fuller*, with whom was *Leo P. Carroll*, for the appellee (defendant Chelsea G.C.A. Realty Partnership, L.P.).

*Opinion*

DUPONT, J. The plaintiff appeals from the trial court's judgment dismissing his complaint, which sought a judgment of mandamus and injunctive relief requiring the town of Clinton defendants[1] to enforce certain provisions of the town zoning regulations

[1] These defendants are Barbara Swan, the town's zoning enforcement officer; the town planning and zoning commission (zoning commission); John Bennet, counsel to the commission; and the town of Clinton.

against the remaining defendant, Chelsea G.C.A. Realty Partnership, L.P. (Chelsea). The dispositive issue in this appeal is whether a builder and developer who alleges that he engaged in owning and developing properties for many years in a particular town has standing to seek judicial aid to enforce that town's zoning regulations against another developer.

Chelsea was constructing a shopping center in the town at the time the complaint was filed.[2] Specifically, the plaintiff sought the issuance of a writ of mandamus and injunctive relief mandating the town zoning enforcement officer and the other town officials to enforce the planning and zoning regulations, and to issue a cease and desist order requiring Chelsea to remove from the shopping center any building exceeding the height of forty feet and to limit the area of any store leased in the shopping center to ten thousand square feet, as allegedly prescribed by the zoning regulations.

Chelsea filed a motion to dismiss on the ground that the plaintiff had failed to exhaust his administrative remedy of appealing from the zoning commission's approval of Chelsea's shopping center site plan. The trial court granted the motion to dismiss on that ground. While we agree that a judgment of dismissal by the trial court should have been rendered, we so conclude on the ground that the plaintiff lacked standing to bring this action. The defendant Chelsea has raised this alternate ground to affirm the judgment of dismissal. See *Cotto* v. *United Technologies Corp.*, 48 Conn. App. 618, 624–25, 711 A.2d 1180, cert. granted on other grounds, 245 Conn. 915, 717 A.2d 233 (1998); *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 742, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996).

The zoning commission's approval of Chelsea's site plan for the shopping center was granted on January

---

[2] The complaint was filed in July, 1996, and the shopping center opened for business in September, 1996.

31, 1995, and the plaintiff did not appeal. The plaintiff filed the present action more than one year after the site plan approval. In granting Chelsea's motion to dismiss, the trial court relied on the rule that a plaintiff who fails to exhaust an available administrative remedy may not bring a separate action raising issues that could have been determined in an appeal from the decision of an administrative agency. *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 425, 655 A.2d 1121 (1995).

No allegation of the complaint, however, attacks the zoning commission's approval of the site plan, nor does the plaintiff seek to have the approval invalidated. The entire complaint is concerned, not with the approval of the site plan, but with Chelsea's alleged failure to comply with certain provisions of the zoning regulations in the course of constructing the shopping center. The plaintiff claims that he could not have known of the alleged violations with respect to building height and store area at the time the site plan was approved, and could not have appealed on grounds that did not then exist. We agree with the plaintiff.

At the time the alleged violations became evident, the plaintiff alleges that he brought them to the attention of the zoning enforcement officer. Although the plaintiff did not pursue an administrative appeal from the zoning enforcement officer's alleged refusal to enforce the zoning regulations, it is unclear in this case whether such an administrative remedy was available to him. Even if we assume that it was, the plaintiff need not have exhausted that remedy before bringing this action.[3]

[3] The motion to dismiss was not based on the plaintiff's failure to exhaust any administrative remedy of appealing from the alleged refusal of the zoning enforcement officer to enforce the regulations, but on his failure to appeal from the approval by the zoning commission of the site plan. The plaintiff's complaint gives no date for the alleged oral refusal of the zoning enforcement officer.

*Cummings* v. *Tripp*, 204 Conn. 67, 80, 527 A.2d 230 (1987). The plaintiff did not fail to exhaust his administrative remedies.

We next consider whether the plaintiff had standing to pursue a direct appeal. There are a number of cases in which plaintiffs have pursued direct appeals without having first exhausted administrative remedies, but such cases do not establish that persons such as the plaintiff in this case have standing. These cases are exceptions to the general rule that administrative remedies must be exhausted as a prerequisite to judicial appeals. In *Reynolds* v. *Soffer*, 183 Conn. 67, 438 A.2d 1163 (1981), it was held that a person specifically and materially damaged by a violation of zoning regulations that has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation without exhausting administrative remedies. The complaint in *Reynolds* alleged a nuisance that "adversely affects the plaintiffs' property, decreases its value, increases the risk of fire and other dangers, specifically endangering health as a result of rodents migrating from the defendants' property . . . and noise, odors, pollution, and disease-causing substances discharged from a new ventilating system." Id., 68. *Reynolds* was concerned with *when* a direct appeal may be taken without first having exhausted the appellate administrative route. It was not concerned with the standing of the person or entity to bring that direct appeal.

In cases such as *Reynolds*, the claims for relief included common-law nuisance as well as injunctive relief. All assumed that the plaintiffs had standing. See *Cummings* v. *Tripp*, supra, 204 Conn. 76 and n.9 (nuisance action claiming " 'grievous injury, damage and harm,' " and "annoyance, personal inconvenience and irritation"); *Scoville* v. *Ronalter*, 162 Conn. 67, 76, 291 A.2d 222 (1971) (" 'sight, noise and disturbance of construction,' " and devaluation of plaintiffs' property);

*Jobert* v. *Morant*, 150 Conn. 584, 588, 192 A.2d 553 (1963) (noise, traffic and other conditions detrimental to neighborhood); *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 178, 377 A.2d 280 (1977) ("smoke, loud noises, odor of burning rubber").

Where a party is found to lack standing, the trial court is without subject matter jurisdiction to adjudicate the cause of action. *Tomlinson* v. *Board of Education*, 226 Conn. 704, 717, 629 A.2d 333 (1993). Lack of subject matter jurisdiction may be raised at any time. *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 574–75, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). " 'Jurisdiction of the subject matter is a question of law and cannot be waived or conferred by consent either in the trial court or here. . . . *Serrani* v. *Board of Ethics*, 225 Conn. 305, 308, 622 A.2d 1009 (1993).' " *Amodio* v. *Amodio*, 45 Conn. App. 737, 739, 697 A.2d 373 (1997), cert. granted on other grounds, 243 Conn. 963, 707 A.2d 1265 (1998).

A motion to dismiss admits all facts well pleaded. *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996), rev'd on other grounds, 243 Conn. 1, 699 A.2d 995 (1997). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. *Mahoney* v. *Lensink*, 213 Conn. 548, 567, 569 A.2d 518 (1990), and cases cited therein." *Pamela B.* v. *Ment*, 244 Conn. 296, 308–309, 709 A.2d 1089 (1998). In the present case, no evidence was offered in the trial court on the issue of standing. For purposes of determining whether the plaintiff has standing, we assume the factual allegations in the complaint to be true.[4] See *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 793.

---

[4] Chelsea argues in its brief that it did not violate the square foot limitation and the tower height limitation as provided in the town's zoning regulations.

The plaintiff alleges in his complaint that he is a builder and developer and that for many years he has been, and continues to be, engaged in owning and developing commercial properties in the town of Clinton. The plaintiff also alleges that Chelsea failed to comply with the town's zoning regulations in the course of constructing the shopping center, and that the town has failed to enforce those regulations against Chelsea. The plaintiff further alleges that these circumstances constitute selective enforcement of the zoning regulations contrary to state law and put him at a severe economic and competitive disadvantage. He claims that he is subject to the same zoning regulations but does not allege that he has actually complied with them at any site built, developed or owned by him and does not allege that he is the owner of another shopping center in the town.

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Thus, standing does not hinge on whether the plaintiff will ultimately be entitled to obtain relief on the merits of an action, but on whether he is entitled to seek the relief." (Citations omitted; internal quotation marks omitted.) Id., 794.

"Standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. [*Assn. of Data Processing Service Organizations, Inc.*

---

This argument, however, goes to the merits of whether the plaintiff would be entitled to relief, not to the plaintiff's standing.

v. *Camp*, 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)]; *Ducharme* v. *Putnam*, 161 Conn. 135, 139, 285 A.2d 318 (1971); *Maloney* v. *Pac*, 183 Conn. 313, 320–21, 439 A.2d 349 (1981). . . . *Mystic Marinelife Aquarium, Inc.* v. *Gill*, [175 Conn. 483, 492, 400 A.2d 726 (1978)]; see *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 126, 627 A.2d 1257 (1993) . . . ." (Citation omitted; internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 160, 699 A.2d 142 (1997).

The zone of interests test was articulated by the United States Supreme Court in *Assn. of Data Processing Service Organizations, Inc.* v. *Camp*, supra, 397 U.S. 150. In that case, the petitioners, providers of data processing services to businesses generally, challenged a ruling by the United States Office of the Comptroller of the Currency permitting national banks, such as the respondent bank, to make data processing services available to other banks and bank customers. Id. The Supreme Court held that the petitioners had standing to maintain the action, in part because it concluded that the particular petitioner was a competitor within the zone of interests protected by § 4 of the Bank Service Corporation Act of 1962, 12 U.S.C. § 1864. *Assn. of Data Processing Service Organizations, Inc.* v. *Camp*, supra, 156–57. The petitioners not only alleged that competition by national banks in the business of providing data processing services might entail some future loss of profits for the petitioners, but also that the respondent bank was performing or preparing to perform such services for two customers for whom one of the petitioners had previously agreed or negotiated to perform such services. Id., 152.

"It has been pointed out that the 'zone of interests' test bears a family resemblance to the 'scope of the risk' doctrine in the law of torts. L. Tribe, American Constitutional Law [1978], pp. 97–98. In tort law, it is

not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of standing, it is not enough that a party is injured by an act or omission of another party. The defendant must have also violated some duty owed to the plaintiff. 'Applying this doctrine to challenges of official government action or inaction, the relevant question would not be simply whether the official or agency violated the law, but rather whether the official or agency violated any duty to the plaintiff.' Id., 98." *Planning & Zoning Commission* v. *Gaal*, 9 Conn. App. 538, 544, 520 A.2d 246, cert. denied, 203 Conn. 803, 522 A.2d 294 (1987).

Whether the plaintiff in the present case has standing to challenge the zoning enforcement officer's alleged failure to enforce particular zoning regulations depends on whether any duty was owed to the plaintiff, that is, whether the plaintiff was within the zone of interests protected by the regulations.[5] This inquiry, in turn, requires an examination of the function and purpose of zoning regulations.

Our case law indicates that the primary purpose of zoning is to protect the *public* interest. "The object of zoning, primarily, is to promote the health, safety, welfare and prosperity of the community. *Devaney* v. *Board of Zoning Appeals*, 132 Conn. 537, 539, 45 A.2d 828 (1946)." *Stephen Reney Memorial Fund* v. *Old Saybrook*, 4 Conn. App. 111, 113, 492 A.2d 533 (1985); see also *Sonn* v. *Planning Commission*, 172 Conn. 156, 161, 374 A.2d 159 (1976) ("[m]unicipal planning is intended to promote the general welfare and prosperity

---

[5] It is well established that an administrative agency's regulations have the same force and effect of a statute unless they are shown to be inconsistent with the authorizing statute. *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 399, 579 A.2d 525 (1990); *Cameron* v. *Alander*, 39 Conn. App. 216, 220, 664 A.2d 332, cert. denied, 235 Conn. 924, 666 A.2d 1185 (1995).

of its people"); *Smith* v. *Planning & Zoning Board,* 3 Conn. App. 550, 554, 490 A.2d 539 (1985), aff'd, 203 Conn. 317, 524 A.2d 1128 (1987) ("purpose of zoning is to regulate property uses in conformance with a comprehensive plan in a manner to advance the public welfare"). Moreover, our Supreme Court has noted that "[t]he maximum possible enrichment of a particular developer is not the controlling purpose of zoning." *Sonn* v. *Planning Commission,* supra, 161; see also *Hyatt* v. *Zoning Board of Appeals,* 163 Conn. 379, 382, 311 A.2d 77 (1972). We conclude that zoning is meant to protect the public at large and not the interests of individual developers. Without some particular harm, such as the maintenance of a nuisance affecting the land of a plaintiff or a statute allowing the maintenance of his lawsuit, the plaintiff can have no standing. See General Statutes § 8-8 (a) (1).

The plaintiff here claims that he has standing to challenge the zoning enforcement officer's alleged failure to enforce the town zoning regulations because this lack of enforcement puts him at an economic and competitive disadvantage. He does not allege with any specificity that the claimed failure to enforce the regulations against the defendant Chelsea in any way infringed on his current business operations. For example, the plaintiff's complaint contains no allegation that he built, developed or owned another shopping center in the town that lost potential tenants to Chelsea because of the alleged selective zoning enforcement. In fact, the plaintiff does not even allege that he complied with the regulations he claims Chelsea violated. He merely alleges that he was "subject to" those regulations.

The plaintiff is essentially claiming that he is harmed by unfair or illegal competition arising from the alleged failure of the zoning enforcement officer to enforce the regulations. In applying the zone of interests test to

this claim, we must discuss several cases that have addressed similar claims.

In *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 524 A.2d 636 (1987), the plaintiff physician alleged unfair or illegal competition in his appeal from a declaratory ruling of the board of examiners in podiatry regarding the scope of podiatry practice in the state. The trial court dismissed the plaintiff's claim. In holding that the plaintiff physician had standing to appeal the board's ruling, our Supreme Court did not explicitly discuss the zone of interests test, but did state that "[a] licensed physician has a right and estate in his profession of which he cannot be deprived without due process of law. . . . Cases are legion holding, in one way or another, that the right of a licentiate to practice his profession is a property right, or a right in the nature of a property right, or a valuable franchise, or a valuable privilege." (Citations omitted; internal quotation marks omitted.) Id., 300. Thus, the plaintiff physician asserted an interest that was within the zone of interests to be protected by a constitutional guarantee, namely the right not to be deprived of his property interest in his medical license without due process of law. The plaintiff in the present case made no such allegation of a property interest entitling him to protection by the constitutional guarantee of due process.

In *Light Rigging Co.* v. *Dept. of Public Utility Control*, 219 Conn. 168, 169, 592 A.2d 386 (1991), the plaintiffs challenged a decision of the defendant department of public utility control (department) that granted a certificate of public convenience and necessity to a potential competitor. The plaintiffs in that case held certificates similar to the one being challenged. Id. Again, the court did not discuss explicitly the zone of interests test, but concluded that the plaintiffs had standing to appeal the department's decision because

the relevant statute expressly requires the department to consider public need for the services to be rendered by an applicant before granting a certificate, thereby entitling existing certificate holders to be free of competition for which no need has been shown. Id., 177. Thus, the *Light Rigging Co.* plaintiffs came within the zone of interests to be protected by the statute in question. The plaintiff in the present case has made no allegation that the relevant zoning regulations require the zoning enforcement officer to consider the plaintiff's competitive interest, nor has the plaintiff alleged reliance on a statute that entitles him to be protected from competition.

In *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 663 A.2d 1011 (1995), the plaintiff, alleging unfair or illegal competition, challenged the granting of a certificate of public convenience and necessity to a potential competitor. In that case, our Supreme Court explicitly applied the zone of interests test to conclude that the plaintiff had no standing to vindicate the interests protected by three out of four statutory sections at issue. The court held that consumers were the only class intended to be protected by those three sections and that competitors had no standing to assert violations of them. Id., 346. As in *Light Rigging Co.*, a particular statute was alleged and relied on to grant protection to the plaintiffs as competitors.

As to the fourth statutory section at issue in *United Cable Television Services Corp.*, the parties did not dispute that the plaintiff had standing to challenge its alleged violation.[6] Our Supreme Court nonetheless confirmed that this particular section "requires the department specifically to take into account the existing

---

[6] The Supreme Court affirmed the trial court's decision not to reach the merits of the plaintiff's claim under this fourth section because the plaintiff failed to provide the trial court with an adequate record for review of the claim.

franchise holder's interests when determining the terms and conditions under which a new franchise will be created. It envisions a level playing field so that an applicant for a new franchise does not enter the market at a competitive advantage." Id., 354–55. There is no indication in the present case that the town zoning enforcement officer is required, either by statute or regulation, to consider the interests of competing developers.

In *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, supra, 242 Conn. 152, the plaintiffs held licenses to provide ambulance services in a particular county. They appealed to the trial court from the decision of the defendant department of public health and addiction services (public health department) granting another entity a license to provide ambulance services in the same area. The court applied the zone of interests test and held that the trial court properly dismissed the plaintiffs' appeal. The court's rationale was that the statute concerning the licensing of ambulance services requires the public health department primarily to protect the public at large and not the interests of individual competitors such as the plaintiffs. Id., 165.

As we have noted, and as included in the stated purposes of the zoning regulations of the town of Clinton, the primary purpose of zoning is to protect the public at large, not the competitive interests of individual developers such as the plaintiff. Section 1.4 of the Clinton zoning regulations provides in part: "Purpose: The purpose of these regulations is to promote the health, safety and general welfare of the community; to conserve the value of property and encourage the most appropriate use of land throughout the Town . . . ."

The plaintiff has failed to cite any statute, regulation or constitutional guarantee that places him within a protected zone of interests. His brief obliquely refers

to a constitutional deprivation but fails to supply any facts to support his claim of selective enforcement of the zoning regulations. The plaintiff has no standing to challenge the town zoning officials' alleged failure to enforce particular zoning regulations against the defendant Chelsea. The trial court properly dismissed the plaintiff's complaint.

The judgment is affirmed.

In this opinion O'CONNELL, C. J., concurred.

SHEA, J., concurring in part and dissenting in part. I agree with the majority that the trial court incorrectly dismissed this action for lack of subject matter jurisdiction because the plaintiff failed to exhaust his administrative remedies. The complaint alleges zoning violations with respect to building height and store area that did not occur until some time after the zoning commission had approved Chelsea's site plan for the shopping center. No administrative remedy was available by the time the claimed violations reasonably could have been discovered.

I disagree, however, with the conclusion of the majority that the plaintiff lacks standing to protect his economic interests as a developer and owner of other shopping centers in the town of Clinton. The complaint alleges that the claimed zoning violations have been called to the attention of the zoning commission, its counsel and the zoning enforcement officer for the town, who has refused the plaintiff's requests for cease and desist orders. The allegation of aggrievement is that the plaintiff is "a major developer, owner, and builder in the town who is subjected to the [zoning regulations] of the Town, [and] the nonenforcement of these regulations as to Chelsea puts the plaintiff at a severe economic and competitive disadvantage, is a grave injury

in fact, and constitutes selective enforcement of the zoning laws contrary to state law."[1]

General Statutes § 8-2 (a) provides in part that "[a]ll such [zoning] regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district . . . ." Implicitly, this provision requires uniform enforcement of zoning regulations. "The obvious purpose of the requirement of uniformity in the regulations is to assure property owners that there shall be no improper discrimination, all owners of the same class and in the same district being treated alike . . . ." *Veseskis* v. *Bristol Zoning Commission*, 168 Conn. 358, 360, 362 A.2d 538 (1975). "Any person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation." *Karls* v. *Alexandra Realty Corp.* 179 Conn. 390, 401, 426 A.2d 784 (1980). "If the plaintiffs have suffered special damages as alleged in their complaint, the court has equitable jurisdiction and may grant injunctive relief." *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 180, 377 A.2d 280 (1977). Courts have frequently applied these principles to find standing on the part of property owners claiming harm resulting from activities on other land that violate zoning regulations. *Reynolds* v. *Soffer*, 183 Conn. 67, 69, 438 A.2d 1163 (1981); *Schomer* v. *Shilepsky*, 169 Conn. 186, 194, 363 A.2d 128 (1975). The requirement of "special damages" serves to differentiate persons having standing to seek relief for zoning violations from the general public.

---

[1] In his brief, the plaintiff contends that Chelsea will have an unfair advantage in attracting customers to its shopping center if the towers it has erected on the shopping center buildings are permitted to exceed the building height limitation that other shopping centers in Clinton must obey. He also maintains that allowing Chelsea to exceed the store area restriction results in an unfair advantage in obtaining the larger retail stores as lessees for its shopping center.

The plaintiff's claim of selective enforcement of the zoning regulations is essentially a claim of unfair and illegal competition in which the town is participating. Although the plaintiff's status as a competitor of Chelsea in the development and ownership of shopping centers in Clinton might not suffice to confer standing, his allegation of unfair and illegal competition presents the standing issue in a different light. The courts of this state have "frequently assumed jurisdiction as a matter of course over claims of unfair or illegal competition." *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 302, 524 A.2d 636 (1987). The complaint sufficiently alleges unfair and illegal competition by virtue of selective enforcement of the zoning regulations impacting the plaintiff's interests as a shopping center owner, given the favorable construction that must be accorded to a complaint on a motion to dismiss for lack of jurisdiction. See *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983).

I would reverse the judgment of dismissal and remand the case to the trial court for further proceedings to provide the plaintiff an opportunity to prove his claim of standing based on unfair competition.