[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 3191
The State defendants have moved to dismiss all counts of the complaint on the basis of sovereign immunity. For the reasons stated, the motion is granted in part, and, in part, denied.
The complaint consists of five counts as follows: Count I against all defendants alleges, in sum, that the defendants have infringed Charter's franchise rights; Count II against the State defendants is a claim of predatory pricing in violation of Connecticut's Anti-trust statute, Connecticut General Statutes35-26, et. seq; Count III against the State defendants asserts an unlawful tying arrangement in violation of C.G.S. 35-26, et. seq; Count IV against all defendants asserts a claim of tortuous interference with the plaintiffs business expectations; and, Count V against all defendants consists of a claim that through their stated activities they have violated C.G.S. 42-110a, Connecticut's Unfair Trade Practices Act.
Against the State defendants the plaintiff seeks injunctive relief. The plaintiff seeks monetary damages and fees from the defendant Lamont.
By way of summary, the plaintiff claims that pursuant to the statutory scheme outlined in 47 U.S.C. § 522, the Connecticut Department of Public Utilities (DPUC) granted it a franchise for the operation of a cable television system in the geographic area which includes Mansfield, Connecticut, the location of the University of Connecticut's (UCONN) Storrs campus, and that pursuant to its franchise, Charter installed cable plant and has provided cable services to UCONN students living in UCONN residence halls. The complaint further alleges that in violation of its franchise, the State Defendants have constructed facilities and entered into an agreement with the defendant Lamont for Lamont to provide programming through cable services to UCONN residence halls. The plaintiff claims that this activity constitutes unlawful interference with its franchise, violates Connecticut's Anti-trust statute, the Unfair Trade Practices Act, and constitutes a tortuous interference with its business opportunities.
A motion to dismiss is the proper vehicle to challenge the court's subject matter jurisdiction. cf. P.B. 10-31. A claim of sovereign immunity implicates the court's subject matter jurisdiction. Amore v. Frankel, 228 Conn. 358 (1994); Novicki v.CT Page 3192City of New Haven, 47 Conn. App. 734 (1998). Therefore, a motion to dismiss is proper where the basis of the motion is sovereign immunity.
"A motion to dismiss admits all, facts well pleaded. (internal citations omitted). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.'(internal citations omitted)" Lewis v.Swan, 49 Conn. App. 669 (1998). Accordingly, in assessing the State defendants' motion to dismiss, the court assumes the veracity of the facts well pleaded in the plaintiffs complaint. Resolution of disputed facts is not part of the court's function at this stage.
The doctrine of sovereign immunity is not an absolute bar to suits against the State. A review of decisional law supports the view that the State may not be sued for monetary damages unless consent for such litigation has been specifically granted by the General Assembly. In 1972, the Supreme Court opined: "It is the established law of our state that the state is immune from suit unless the state, by appropriate legislation, consents to be sued. (internal citations omitted) The state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed by the use of express terms or by force of a necessary implication." Baker v. Ives, 162 Conn. 295,298 (1972). Additionally, the State is not bound by legislative proscriptions unless the law's proscriptions are directed specifically to the State. "The king is not bound by an act of parliament unless he be named therein by special and particular words. The most general words that can be devised, as any person or persons, bodies politic or corporate, affect not him in the least, if they may tend to restrain or diminish any of his rights or interests." State of Connecticut v. City of Hartford,50 Conn. 89 (1882) Thus, legislation which prohibits certain conduct is held not to be a limitation on the State's power unless the law, by its own language or by necessary implication, binds the State.
Neither the Connecticut Anti-trust Act nor the Unfair Trade Practices Act specifically includes language indicating applicability to State activities. C.G.S. 35-25 (b) defines "person" as "any individual, proprietorship, corporation, limited liability company, firm, partnership, incorporated and CT Page 3193 unincorporated association, or any other legal or commercial entity." C.G.S. 41-110(3) defines "person" as a "natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, and any other legal entity." Neither definition specifically includes the State. While the term "any other legal entity" could arguable include the State, any statutory waiver of immunity must be narrowly construed. Struckman v. Burns, 205 Conn. 542(1987); Cooper v.Delta Chi Housing Corporation, 41 Conn. App. 61 (1996).
Contrary to the plaintiffs assertions, the term "or any other legal entity" is not sufficiently broad to conclude that the State is included in the proscriptions of either C.G.S. 41-110 or C.G.S. 35-25 by necessary implication. In C.G.S. 22a-2(c), the Environmental Protection Act, the General Assembly defined the term "person" as "any individual, firm, partnership, association, syndicate, company, trust, corporation, limited liability company, municipality, agency or political or administrative subdivision of the state, or other legal entity of any kind." "[W]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Alteration in original; internal quotation marks omitted.) In re Ralph M., 211 Conn. 289,306 (1989). Since the General Assembly had specifically included the State in the definition of "person" in one proscriptive statute, the court cannot find that the State is included, by implication, in the definition of "person" in another similar statute.
Nor is the State bound by the proscriptions of either C.G.S.22a-25 or C.G.S. 41-110 by necessary implication on the basis of the purposes of the statutes. In this regard, Connecticut's Anti-trust Act and Unfair Trade Practices Act are unlike C.G.S.17a-540 (formerly 17-206), the Patients' Bill of Rights, which is a remedial statute intended to promote the protection of dignity and care of patients in public and private health care facilities. Though the portion of the statute which authorizes suit for violation of the Patient's Bill of Rights does not specifically grant a right of action against the State, the right to sue the State under this Act was held to be necessarily implied because of the remedial nature of the act and the specific inclusion of its protections to patients in public health care facilities. cf. Mahoney v. Lensink, 213 Conn. 548
(1990). CT Page 3194
Since neither the Anti-trust Act nor the Unfair Trade Practices Act specifically bind the State, sovereign immunity bars suit against the State for any purported violation of either law. The motion to dismiss is granted as to the second, third, and fifth counts of the complaint.
Aside from legislative leave, the broadening and often intrusive role of government in commerce and human activity has caused some erosion in the doctrine of sovereign immunity. Recently, the Supreme Court opined:
 Sovereign immunity rests on the principle and on the hazard "that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property." J. Block, "Suits against Government Officers and the Sovereign Immunity Doctrine," 59 Harv. L. Rev. 1060, 1061 (1946). "In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts." Sentner v. Board of Trustees, supra, 184 Conn. 343. When a state official's acts are in excess of legal authority or constitute an erroneous exercise of that authority, "the interest in the protection of such action outweighs the interest served by the sovereign immunity doctrine." (Internal quotation marks omitted.) Horton v. Meskill, supra, 172 Conn. 624. Therefore, "[t]he state is subject to suit without consent . . . in a suit for injunctive relief when the action does not defeat the purpose of the doctrine of sovereign immunity by undue interference with governmental functions." Duguay v. Hopkins, 191 Conn. 222, 227 n. 4. Pamela B. v. Ment, 244 Conn. 296 (1998); cf. also, Unisys Corp. v. Department of
Labor, 220 Conn. 689 (1991); Sentner v. Board of Trustees, 184 Conn. 339 (1981).
Count I constitutes a claim that the State, acting through UCONN and its trustees, has acted beyond its authority by constructing cable facilities and providing, in concert with Lamont, integrated voice, data and cable services to student resident halls at the Storrs campus, the cost of which can be directly correlated to an increased per student room rate. Charter asserts that it alone has a franchise for the geographic area which includes Storrs, and that neither the State nor Lamont has authorization from the DPUC to provide cable services. CT Page 3195
In their motion to dismiss, the State defendants assert that they are not legislatively bound by DPUC's regulatory scheme because the legislation under which the DPUC acts does not specifically require the State to obtain a certificate in order to operate a cable system. Additionally, the State claims that the system in operation at the Storrs campus is not, in fact, a cable system. Therefore, the State reasons, their activity is not subject to DPUC regulations. The State also claims that legislation known as UCONN 2000 specifically authorizes the activity in dispute.
The authority of the DPUC to regulate community antenna television systems is found in C.G.S. 16-331 et. seq. In pertinent part, C.G.S. 16-331 states:
 No person, association or corporation, or a municipality which owns or operates one or more plants for the manufacture or distribution of electricity pursuant to section 7-213, shall construct or operate a community antenna television system without having first obtained a certificate of public convenience and necessity from the Department of Public Utility Control certifying that the person, firm or corporation is qualified pursuant to the provisions of subsection (b) of this section to operate such a service within the territory specified in such certificate.
The State correctly points out that this act does not specifically require the State to obtain such a certificate should it choose to operate a community antenna television system.
This legislation, however, has to be understood in the broader context of the Cable Communications Policy Act (CCPA), as amended. 47 U.S.C. § 521, et. seq. The stated purposes of this Federal legislation are to:
 (1)establish a national policy concerning cable communications; II (2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community; (3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems; (4) assure that cable communications provide and are encouraged CT Page 3196 to provide the widest II possible diversity of information sources and services to the public; (5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this title; and, (6) promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems. 47 U.S.C. § 521.
The CCPA provides that: "a cable operator may not provide cable service without a franchise." 47 U.S.C. § 541(b)(1). A franchising authority is stated to be "any governmental entity empowered by Federal, State, or local law to grant a franchise".47 U.S.C. § 522(10). In Connecticut, the DPUC is the franchising authority. The term "person" as used in the CCPA is stated to mean, "an individual, partnership, association, joint stock company, trust, corporation, or governmental entity." 47 U.S.C. § 522(14). Thus, the requirements and proscriptions contained in the CCPA specifically pertain to government. Although Connecticut's legislative scheme does not specify that it pertains to the State, if the State acts as a cable operator its activities are subject to the DPUC's regulatory scheme by necessary implication of Federal law.
To the extent that the State may not fall within the general definition of "person" as utilized in C.G.S. 16-331, that omission is superseded by the explicit inclusion of governmental entities within the Federal definition of the term "person" in the CCPA. The CCPA provides, in "part, that "any provision of law of any State, political subdivision, or agency thereof, or franchising authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded." 47 U.S.C. § 556(c).
The State further claims that recent legislation known as UCONN 2000 specifically authorizes the State to conduct the activities which are the subject of this litigation. cf. C.G.S. 10a-109 et. seq.. The court is unpersuaded. To the extent that the State's activities at the Storrs campus consist of cable operations, UCONN 2000 does not excuse the State from compliance with DPUC"s regulatory scheme. To the contrary, in pertinent part UCONN 2000 requires UCONN and its trustees to obtain "any license, permit, and approval required or permitted to be issued and any administrative action required or permitted to be taken pursuant to the general statutes" from the "commissioners having CT Page 3197 jurisdiction over said license, permits or approvals." C.G.S.10a-109n(3).
The State next contends that even if it would be subject to DPUC regulation for the operation of a cable system, it's subject activities do not, in fact, constitute a cable system. In support of this argument, the State asserts that students are not "subscribers" as defined by the law, and that its system does not utilize a public right of way. The plaintiffs allegations that the State is operating a cable system in violation of its DPUC franchise are supported by sufficient facts to constitute a significant claim that the State is acting beyond its authority. The court will not adjudicate the merit of these conflicting factual claims in the context of a motion to dismiss. Accordingly, the motion to dismiss Count I is denied.
In Count IV, the plaintiff restates the essential allegations of the Count I and further asserts that the State defendants' activities constitute a tortuous interference with the plaintiffs franchise rights and its business expectations. The State moves to dismiss this count on the basis of sovereign immunity. The State accurately asserts that there is no statutory authorization for suit against the State based on tortuous interference with business expectations. If through this count the plaintiff sought monetary damages, the count would be subject to dismissal. However, the plaintiff asserts this count as a separate basis in its quest for injunctive relief. As such, it is subject to the application of decisional law cited supra that the doctrine of sovereign immunity does not operate to insulate the State from litigation seeking injunctive relief to the extent that such relief may be granted in a manner that does not unreasonably interfere with legitimate government function. Accordingly, the State's motion to dismiss Count IV is denied.
Bishop, J.