[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTS
On July 31, 2001, the plaintiff, David R. Wilcox, filed a four count complaint against the defendants, American Materials Corporation and Donald Bercowetz. The First Count is characterized by plaintiff as a wetlands enforcement action against American Materials Corporation pursuant to General Statutes § 22a-44 (b).[1] The Second Count is also described by plaintiff as a wetlands enforcement action against Donald Bercowetz individually pursuant to § 22a-44 (b). The Third Count is an action for fines against Bercowetz. The Fourth Count is a private zoning enforcement action against American Materials Corporation. On November 5, 2001, the defendants filed a motion to dismiss the plaintiff's complaint in its entirety. On December 7, 2001, the plaintiff filed a memorandum in opposition to the defendants' motion to dismiss. Oral argument was held on February 27, 2002. For the reasons stated below, the Motion to Dismiss is denied as to the First, Second and Third Counts, and granted as to the Fourth Count.
DISCUSSION
A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991
(1983). "[Iln ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford,247 Conn. 407, 410-11, 722 A.2d 271 (1999).
A motion to dismiss is used to assert (1) lack of jurisdiction over the subject matter. . . ." (Internal quotation marks omitted.) Sadloski v.Manchester, 235 Conn. 637, 645-46 n. 13, 668 A.2d 1314 (1995). "[S]tanding . . . implicates a court's subject matter jurisdiction, which may be raised at any point in judicial proceedings." Stamford Hospitalv. Vega, 236 Conn. 646, 656, 674 A.2d 821 (1996).
THE FIRST, SECOND, AND THIRD COUNTS
The defendants argue that the plaintiff lacks standing to pursue the First, Second and Third Counts because § 22a-44 (b) only confers standing to bring action based on violations of ordinances and CT Page 5031 regulations, not permit violations. The defendants rely on Simko v.Ervin, 234 Conn. 498, 661 A.2d 1018 (1995), to support the proposition that permits are different from ordinances and regulations. In Simko v.Ervin, supra, 234, however, "[t]he dispositive issue . . . [was] whether, in order to challenge the conformity of a building with the terms of a variance, the plaintiffs were required to exhaust their administrative remedies before seeking declaratory and injunctive relief in the trial court." Id., 499. There, the court distinguished between variances and zoning ordinances stating that: "Variances are, in a sense `the antithesis of zoning.'" Id., 505. A variance is authorization obtained from the zoning board of appeals to use property in a manner otherwise forbidden by the zoning regulations. Grillo v. Zoning Board ofAppeals, 206 Conn. 362, 372, 537 A.2d 1030 (1988). The Simko court reasoned that the plaintiffs should be required to exhaust their administrative remedies before bringing an action in Superior Court because variances are fact-specific and the agency's application of its special knowledge in an administrative proceeding could be helpful to the court on review. See Simko v. Ervin, supra, 234 Conn. 505-07.
A permit, unlike a variance, authorizes a use that the zoning regulations expressly permit under conditions specified in the regulations. W A T R, Inc. v. Zoning Board of Appeals, 158 Conn. 196,200, 257 A.2d 818 (1969). The Simko court did not discuss permits or their relationship to ordinances and regulations. Because Simko v.Ervin, supra, 234, does not address permits, it is not persuasive authority in the present case. Additionally, as plaintiff notes, Section 4.2.A of the Wetlands Regulations prohibits anyone from violating the terms of a wetlands permit. For purposes of conferring standing, the court accepts plaintiff's argument that the wetlands permits issued in the present case logically fall within the meaning of "ordinances and regulations promulgated by municipalities" as set forth in § 22a-44
(b).
Moreover, the plaintiff has alleged that the defendant "has committed, taken part in and/or assisted multiple violations of the Wetlands Regulations and the conditions of the Wetlands Permits issued thereunder." (Plaintiff's Complaint, First Count, ¶ 9.). This allegation was also incorporated into the Second and Third Counts of the plaintiff's complaint. Taking the pleadings in the light most favorable to the plaintiff, as the court must on a motion to dismiss, the plaintiff has sufficiently pleaded that the defendants violated municipal regulations and thus has standing under § 22a-44 (b). Accordingly, the defendants' first argument fails.
The defendant next argues that the term "any person" as used in Section22a-44 (b) should be read to mean "any aggrieved person." Following oral CT Page 5032 argument on February 26, 2002, the Court asked the parties to submit supplemental memoranda examining the legislative history of this provision. The parties have done so. Having evaluated the arguments of both sides, the court concludes that "any person" should not be narrowly read to mean "any aggrieved person," as defendant urges.
The defendant argues that Section 22a-44 (b), which states in pertinent part that "The Superior Court, in an action brought by the commissioner, municipality, district or any person shall have jurisdiction . . ." (Emphasis added), should not be read literally. The defendant claims that the inland-wetlands laws have an overall purpose of reposing authority in local, and state, boards and agencies. Therefore, the reference to "any person" must be read, defendant urges, to mean "any person" authorized by local regulations or ordinances to enforce the inland wetlands ordinances and regulations, including "duly authorized agents." Defendant's Letter dated March 11, 2002. Plaintiff disagrees and argues that "any person" means any person, without limitation. For the following reasons, the court believes the plaintiff's argument has more merit.
First, it is true, as defendant argues, that courts should consider the overall purpose of a statute when interpreting individual words or terms. But the statutes under consideration have more than one overall purpose which goes beyond merely reposing authority in the hands of local and state authorities. See Section 22a-36, which sets out the broad legislative goal of ". . . making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing disturbance and pollution . . ." More significantly, in this case, the legislature has explicitly defined the meaning of the terms used in the Inland Wetlands and Watercourses Act, Sections 22a-36
to 22a-45 inclusive. Section 22a-38 (2) defines "person" to mean "any person, firm, partnership, association, corporation, limited liability company, company, organization or legal entity of any kind, including municipal corporations, governmental agencies or subdivisions thereof . . ." This definition is extremely broad, and includes a variety of entities which can be distinguished from "persons." It is also noteworthy that the first words of Section 22a-44 (b) refer to "Any person . . ." who commits a violation. Obviously, to interpret this first use of the words "any person" to mean "any aggrieved person" would be nonsensical. Therefore, acceptance of defendant's argument would require the court to read "any person" — an explicitly defined term — as having two different meanings in the same statute — first, to mean "any person" without limitation; and second, to mean "any aggrieved person." The Court is unwilling to so finely parse this statute. The Court must assume that the legislature used the term "any person" purposefully and in contradistinction to the many other terms listed in the statute. The court also notes that if aggrievement were required, the legislature CT Page 5033 could simply have said so, as it has done in other statutes. See, e.g., Section 22a-34, "Appeal, " which states in relevant part that an appeal may be taken by" . . . the applicant . . . or any person . . . who has been aggrieved . . ."
Finally, a 1976 revision, Public Act 76-330, entitled "An Act Concerning the Award of Damages in Actions Brought Under the InlandWetlands Act," provides indirect support for plaintiff's view. The revision provided the initiator of a Superior Court Enforcement Action — "any person" — a financial incentive to bring such actions. The bill's presenter, Rep. Dorothy S. McCloskey, stated that "The bill would clarify that the fees which may be assessed as damages include reasonable attorney's fees . . . all amounts assessed as damages must be awarded to the person, municipality, or district which brought the suit." See Attachment C to Plaintiff's Supplemental Memorandum In Opposition to Motion to Dismiss dated March 12, 2000.
Defendants argue that a literal reading of "any person" will permit totally uninterested parties to bring lawsuits. But it is highly unlikely that someone with absolutely no interest in a case will file a lawsuit simply because they are able to, given the statutory directive See Section 22a-44 (b), that all penalties collected must be used by the Commissioner of Environmental Protection for the public good. Moreover, if the legislature is concerned about such a remote possibility, it is free to amend the statutory language to narrow it.
The defendants next argue that the plaintiff has failed to exhaust his administrative remedies. As noted, § 22a-44 (b) specifically confers standing on "any person" to bring an enforcement action. Section 22a-44
(b) affords non-administrative remedies that are not available to the plaintiff at the administrative level.[2] Accordingly, the plaintiff is not required to exhaust all administrative remedies before commencing an action under § 22a-44 (b) in Superior Court.
The defendants' final argument as to the First, Second and Third Counts is that the court should dismiss the complaint under the doctrine of primary jurisdiction. "Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." (Internal quotation marks omitted.) Mazzola v. Southern New EnglandTelephone Co. 169 Conn. 344, 349, 363 A.2d 170 (1975). However, "The doctrine of primary jurisdiction . . . cannot operate to divest a court of its ultimate jurisdiction. . . . [T]he threshold issue in determining CT Page 5034 whether [the] doctrine [of primary jurisdiction] applies is whether both the court and an agency have jurisdiction over the same issue." (Citations omitted; internal quotation marks omitted.) Second Injury Fundof the State Treasurer v. Lupachino, 45 Conn. App. 324, 348-49,695 A.2d 1072 (1997). "[A] court may not refer a controversy within its jurisdiction to an agency under . . . [the primary jurisdiction] doctrine where the agency itself lacks jurisdiction; the court's jurisdiction in such cases is exclusive." Mazzola v. Southern New England Telephone Co.,
supra, 349.
In the present case, the court has authority pursuant to § 22a-44
(b) to impose penalties that the local inland wetlands agency does not have statutory authority to impose. Section 22a-44 (b) permits the Superior Court "to assess civil penalties" against the defendant. The plaintiffs have the right to invoke the jurisdiction of the Superior Court in order to obtain injunctive relief and civil fines, which will be used by the commissioner in any of the four ways set out in § 22a-44 (b). Pursuant to § 22a-44 (b), the court has subject matter jurisdiction in this matter. Accordingly, because § 22a-44 (b) confers standing on any person to commence action based on violations of municipal inland wetlands permits, the defendants' motion to dismiss the First, Second and Third Counts of the plaintiff's complaint based on lack of standing is denied.
THE FOURTH COUNT
The defendants argue that the plaintiff lacks standing to pursue the Fourth Count, the private zoning enforcement action. The court agrees.
In the Fourth Count, the plaintiff alleges that because the defendants' violation of zoning regulations he has been "put at a severe competitive disadvantage" and has suffered a "special injury" entitling him to pursue a private zoning enforcement action pursuant to common law. Examination of the complaint reveals, however, that the plaintiff fails to allege any harm other than "competitive injury". Lewis v. Swan, 49 Conn. App. 669,716 A.2d 127 (1998), is on point. The court stated in Lewis that "[t]he dispositive issue in this appeal is whether a builder and developer who alleges that he engaged in owning and developing properties for many years in a particular town has standing to seek judicial aid to enforce that town's zoning regulations against another developer." Id., 671. "Standing concerns the question whether the interest sought to be protected by the complaint is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (Internal quotation marks omitted.) Id., 675. The Lewis court also stated "[w]e conclude that zoning is meant to protect the public at large and not the interests of individual developers. Without some CT Page 5035 particular harm, such as the maintenance of a nuisance affecting the land of a plaintiff or a statute allowing the maintenance of his lawsuit, the plaintiff can have no standing." Id., 678.
The same is true here. The plaintiff must allege more than mere competitive harm to have standing to enforce a zoning regulation. The plaintiff relies on Fitzgerald v. Merard Holding Co., 106 Conn. 475,138 A. 483 (1927), to support the proposition that alleging competitive harm or financial loss is the type of special injury sufficient to bring a zoning enforcement action. The plaintiff misconstrues Fitzgerald. There, the defendant was building a commercial structure in an area which, according to the zoning regulations, was restricted solely to residential purposes. The plaintiff, who resided in the same area, alleged that the defendant's violation of the zoning regulations caused specific injuries to her property in addition to financial loss she would incur from the unmarketability of her property. The financial loss to the plaintiff would be incurred because the defendant's business and related activities rendered her property unmarketable for sale. Therefore, the zoning regulations made her property valueless for business purposes and the defendant's violation of the zoning regulations rendered her property valueless for residential purposes. Id., 478.
In Fitzgerald, the plaintiff also claimed specific allegations of personal harm to distinguish her from the rest of the community. The court stated that: "[In the amended complaint] . . . we find specifications of the special injury suffered. These consist of the erection of this building used for business purposes in a residential zone devoted exclusively to homes and private dwellings, and in close proximity to plaintiff's dwelling with the result that the plaintiff's property . . . [had] its marketability . . . entirely destroyed for residential purposes, and further that the conduct of the business, the crowds they collect, the motor traffic brought upon the highway and their use of plaintiff's sidewalk and lawn, damage her property, and the conduct of these businesses makes so much noise as to render it impossible for her to sleep and greatly disturb the peace in and about her property, making the annoyance to her special and peculiar and totally different from that to the public and property owners in this zone and neighborhood)' Id., 480. "In addition, the conduct of these businesses has resulted in a serious injury to her property as a dwelling-place, from which the court must take judicial notice that damage must result. These allegations make a very clear case of special damage." Id., 482. The special damages alleged in Fitzgerald distinguished the plaintiff from any other town resident and placed the plaintiff within the zone of interests to be protected by the zoning regulations.
In the present case, unlike in Fitzgerald, the plaintiff has not CT Page 5036 alleged any particular harm of the kind necessary to confer standing. An allegation of mere competitive harm is insufficient. Accordingly, the plaintiff lacks standing to enforce the zoning regulations and this court lacks subject matter jurisdiction. The defendants' motion to dismiss the Fourth Count is granted.[3]
For the above reasons, the defendants' motion to dismiss as to the First, Second and Third Counts is denied. The defendants' motion to dismiss as to the Fourth Count is granted.
Douglas S. Lavine Judge, Superior Court